******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ACKEEM RILEY
## (AC 40073)

Keller, Elgo and Bright, Js.

*Syllabus*

The defendant, who had been convicted of murder and several other crimes when he was seventeen years old, appealed to this court from the judgment of the trial court after it resentenced him to seventy years of imprisonment. The trial court initially had sentenced the defendant to 100 years of imprisonment in connection with a shooting incident. This court affirmed the judgment of the trial court, and the defendant appealed to our Supreme Court, which reversed this court's judgment as to the sentence. The Supreme Court directed that this court remand the case to the trial court for a new sentencing proceeding that conformed to the dictates of *Miller* v. *Alabama* (567 U.S. 460), which requires that the trial court give mitigating weight to the defendant's youth and its hallmark features when considering whether to impose the functional equivalent of life imprisonment without parole. After this court remanded the case to the trial court, but before the defendant's resentencing hearing, the legislature enacted amendments (P.A. 15-84) to the statutes applicable to the sentencing of children convicted of certain felonies (§ 54-91g) and parole eligibility (§ 54-125a) to ensure that juveniles sentenced to more than ten years of imprisonment are eligible for parole, and to require that sentencing judges consider a juvenile's age and youth related mitigating factors before imposing sentence. At the defendant's resentencing hearing, the defendant was sentenced by the same judge who had presided over his trial and imposed the original sentence. On appeal to this court, the defendant claimed that the resentencing court improperly relied on the parole eligibility provisions of P.A. 15-84, and failed to disqualify itself in violation of statute (§ 51-183c), the rule of practice (§ 1-22 [a]) that requires disqualification when the judicial authority previously tried the same matter and the judgment was reversed on appeal, the Code of Judicial Conduct (rule 2.11 [a] [1]), and the due process clauses of the fifth and fourteenth amendments to the United States constitution. *Held*:

1. The resentencing court did not abuse its discretion in denying the defendant's motion for recusal:

   a. Recusal was not required under § 51-183c, our Supreme Court previously having concluded that the legislature did not intend for § 51-183c to apply to a sentencing proceeding, and because the rules promulgated by the judges of the Superior Court cannot abridge, enlarge or modify any substantive right, Practice Book § 1-22 does not apply to a sentencing procedure, as that rule was intended to give effect to the mandate in § 51-183c, rather than provide for an independent ground for recusal.

   b. The defendant failed to satisfy his burden to show that disqualification of the judicial authority was required under rule 2.11 (a) (1) of the Code of Judicial Conduct, which was based on his claim that the resentencing court was biased in favor of justifying its initial 100 year sentence: the defendant's claim that the 100 year sentence had an anchoring effect that prevented the court from approaching the resentencing hearing with a fully open mind that would allow it to fully consider the factors required under *Miller* was based on speculation and conjecture, as the defendant did not explain why only the original sentencing judge would be susceptible to any anchoring effect, any judge who imposed the new sentence would know of the prior sentence, and the fact that a trial judge previously sentenced a defendant in a particular case where resentencing was ordered did not establish an appearance of bias or partiality; moreover, it was not apparent that the court's statements during the resentencing hearing indicated an interest in justifying the appropriateness of the original sentence, as the court repeatedly stated that it would consider the appropriate factors and impose sentence accordingly, it never expressed that it would not or could not consider the defendant's age as a mitigating factor, nor did it ever express an unwillingness to

consider new information at resentencing, as required by *Miller*, and the defendant failed to demonstrate how the court's willingness to consider new information constituted actual bias or would lead a reasonable person to question the judge's impartiality on the basis of all the circumstances.

2. The resentencing court properly sentenced the defendant in accordance with the Supreme Court's remand order, the applicable statutory authorities and the constitutional principles contemplated in those authorities: the resentencing court was not required under the Supreme Court's remand order to find that the defendant was incorrigible, irreparably corrupt or irretrievably depraved before resentencing him, as the Supreme Court's discussion about a presumption against a life sentence without parole that must be overcome by evidence of unusual circumstances was rendered inapplicable by the enactment of P.A. 15-84, which provided the defendant with the possibility of parole, and although the defendant claimed that pursuant to *Miller*, the Supreme Court's decision in his appeal and P.A. 15-84, there was a presumption against the imposition of a life sentence that could be imposed only after a finding that the juvenile was permanently incorrigible, irreparably corrupt or irretrievable depraved, the resentencing court was required to consider only how the scientific and psychological evidence described in § 54-91g (a) (1) counseled against such a sentence; moreover, there was no indication in the record that the resentencing court considered the seventy year sentence to be inappropriate but nevertheless imposed it because the defendant would be eligible for parole, as the court referred to the defendant's eligibility for parole, as was required pursuant to § 54-91g (c), it fully considered and made clear its duty and intention to apply the *Miller* factors, and to comply with § 54-91g and the Supreme Court's decision in the defendant's appeal, it considered the defendant's presentence investigation report, aspects of his upbringing and testimony from the defendant and his family members, and it discussed the defendant's age, the hallmark features of adolescence, the relevant science that distinguishes a child's development from that of an adult's and other mitigating factors, and balanced them with the circumstances of the crime at issue, and noted that the defendant had been involved in other incidents that resulted in the deaths and wounding of other persons.

Argued December 12, 2018—officially released May 14, 2019

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of attempt to commit murder and assault in the first degree, and with one count each of the crimes of murder and conspiracy to commit murder, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *O'Keefe, J.*; verdict and judgment of guilty, from which the defendant appealed to this court, which affirmed the trial court's judgment; thereafter, the defendant, on the granting of certification, appealed to the Supreme Court, which reversed this court's judgment and remanded the case to this court with direction to reverse the trial court's judgment as to the defendant's sentence and to remand the case to the trial court for a new sentencing proceeding; subsequently, the court, *O'Keefe, J.*, denied the defendant's motion for recusal and, following a hearing, rendered judgment imposing sentence, from which the defendant appealed to this court. *Affirmed.*

*Michael W. Brown*, assigned counsel, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy* state's attorney, and *John F. Fahey*, supervisory assistant state's attor-

ney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Ackeem Riley, appeals from the judgment of the trial court resentencing him following the decision of our Supreme Court, which reversed the judgment of this court and remanded the case to this court with direction to reverse the judgment of the trial court with respect to the defendant's original sentence and to remand the case to the trial court for a new sentencing proceeding. See *State* v. *Riley*, 315 Conn. 637, 663, 110 A.3d 1205 (2015), cert. denied, U.S. , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016). The defendant claims that the trial court (1) failed to disqualify itself from presiding over the resentencing proceeding, and (2) violated the rescript of *Riley*, ignored important constitutional principles, and failed to comply with applicable mandatory statutory requirements when it resentenced him to seventy years of incarceration. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as set forth by our Supreme Court, are relevant to this appeal. "In November, 2006, when the defendant was seventeen years old, he participated in a drive-by shooting into a crowd that left an innocent sixteen year old dead and two other innocent bystanders, ages thirteen and twenty-one, seriously injured. The defendant and his accomplice thought that someone responsible for a gang related shooting the previous week was at the scene. The defendant's identity as one of the perpetrators was corroborated by his involvement in an incident two months after the crimes at issue in which a firearm was discharged that matched the weapon used in the 2006 shootings. A jury convicted the defendant of one count of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8, two counts of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a), two counts of assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8, and one count of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a). The murder conviction exposed the defendant to a potential sentence of twenty-five to sixty years imprisonment, with no possibility of parole. See General Statutes §§ 53a-35a (2), 53a-35b and 54-125a (b) (1) (E). The other convictions exposed him to sentences ranging from one year imprisonment to twenty years imprisonment." *State* v. *Riley*, supra, 315 Conn. 641–42. The trial court imposed a total effective sentence of 100 years of incarceration. Id., 642.

In his initial appeal to this court; *State* v. *Riley*, 140 Conn. App. 1, 58 A.3d 304 (2013), rev'd, 315 Conn. 637, 110 A.3d 1205 (2015), cert. denied, U.S. , 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016); the defendant argued that his sentence and the procedure under which it was imposed violated his rights under the eighth and

fourteenth amendments to the federal constitution. Id., 4, 10 and n.7. In particular, the defendant argued that the United States Supreme Court's decision in *Miller* v. *Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which held that the eighth amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders, rendered the manner in which his sentence was imposed unconstitutional.[1] *State* v. *Riley*, supra, 9. This court rejected the defendant's contentions and affirmed the judgment of the trial court. Id., 21.

On appeal to our Supreme Court, the defendant argued that this court's decision was incorrect as a matter of law and fact. *State* v. *Riley*, supra, 315 Conn. 643–44. For reasons set forth in greater detail in part II of this opinion, our Supreme Court agreed with the defendant and reversed this court's judgment and remanded the case to this court with direction to reverse the judgment of the trial court only with respect to the defendant's sentence, and to remand the case to the trial court for a new sentencing proceeding consistent with its opinion. Id., 663.

On remand to the trial court, the defendant filed a motion for recusal dated June 24, 2016. The basis for most of his arguments stemmed primarily from the fact that the resentencing judge, *O'Keefe, J.*, was the same judge who had presided over his trial and had imposed the original sentence. The defendant argued, for various reasons, that Practice Book § 1-22, General Statutes § 51-183c, rule 2.11 of the Code of Judicial Conduct, and the due process clause of the fourteenth amendment required recusal. On August 11, 2016, the court held a hearing on the motion for recusal and ultimately denied the motion after hearing the parties' arguments.

On November 2, 2016, the defendant appeared before the court for resentencing. At the hearing, the court addressed, among other things, the considerations set forth in our Supreme Court's decision in *Riley* and the relevant statutory provisions applicable to the defendant's sentencing. After a lengthy colloquy, the court resentenced the defendant to a total effective term of seventy years of incarceration, noting that he was eligible for parole. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the defendant first claims that the trial court erred by not granting his motion for recusal. In his view, the court was required to recuse itself pursuant to § 51-183c, Practice Book § 1-22, rule 2.11 of the Code of Judicial Conduct, and the due process clauses of the fifth and fourteenth amendments to the United States constitution. The state argues, inter alia, that neither our rules of practice nor our statutes prohibited the court from presiding over the defendant's resentencing

proceeding. For the reasons discussed herein, we agree with the state.

### A

We begin by first addressing whether § 51-183c and Practice Book § 1-22 required the court to recuse itself on remand following the reversal of the defendant's original sentence.

As a preliminary matter, we set forth the applicable standard of review. Although our review of whether a court properly denied a motion for recusal is based on the abuse of discretion standard; see *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017); the claims in the present case require us to determine whether § 51-183c and Practice Book § 1-22 required recusal in this situation, which presents a question of statutory interpretation. Therefore, our review is plenary. See *Patino* v. *Birken Mfg. Co.*, 304 Conn. 679, 688, 41 A.3d 1013 (2012).

To begin, the defendant's argument that § 51-183c[2] required the court to recuse itself in this case is unpersuasive because it is easily foreclosed by our Supreme Court's decision in *State* v. *Miranda*, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). In *Miranda*, our Supreme Court addressed a similar situation in which a defendant claimed that § 51-183c required that his case be "assigned to another trial judge for resentencing." Id., 131. After our Supreme Court analyzed the statute in relation to other pertinent authorities, it concluded that "the legislature did not intend for § 51-183c to apply to a sentencing procedure." Id., 132; see also *Daley* v. *J.B. Hunt Transport, Inc.*, 187 Conn. App. 587, 601 n.17, 203 A.3d 635 (2019) (explaining that sentencing hearing is proceeding "to which § 51-183c does not apply"). Although the defendant attempts to distinguish *Miranda* in various ways, none is persuasive.[3] To say more on the matter would be supererogatory.

With that in mind, though, the defendant argues that Practice Book § 1-22 provides an independent basis for recusal separate from § 51-183c. In particular, he focuses on the specific language of the rule that provides that "[a] judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein . . . because the judicial authority previously tried the same matter and . . . *the judgment was reversed on appeal*." (Emphasis added.) Practice Book § 1-22 (a). He argues that because a sentence imposed in a criminal case constitutes the judgment of conviction, and because the defendant's sentence was in fact reversed, the trial court that originally tried and sentenced him was required, on remand, to recuse itself for the resentencing hearing.

Despite the defendant's contention, our decision in

*Barlow* v. *Commissioner of Correction*, 166 Conn. App. 408, 422, 142 A.3d 290 (2016), appeal dismissed, 328 Conn. 610, 182 A.3d 78 (2018), undermines the defendant's claim. In *Barlow*, we addressed briefly the interplay between the two provisions. The petitioner in that case claimed that the habeas court improperly denied his motion for recusal, in which he relied on § 51-183c, Practice Book § 1-22 (a), and rule 2.11 (a) of the Code of Judicial Conduct. Id., 421. With respect to that claim, we stated that "[t]he mandate of § 51-183c, a subject of prior judicial interpretation, is plain and unambiguous. It provides in relevant part: 'No judge of any court who tried a case without a jury . . . in which the judgment is reversed by the Supreme Court, may again try the case. . . .' General Statutes § 51-183c." *Barlow* v. *Commissioner of Correction*, supra, 422. Significant to the present case, we explained that "[o]ur rules of practice *give effect* to this statutory right [in § 51-183c] by providing in relevant part: 'A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein . . . because the judicial authority previously tried the same matter and . . . the judgment was reversed on appeal. . . .' Practice Book § 1-22 (a)." (Emphasis added.) *Barlow* v. *Commissioner of Correction*, supra, 422.

Although the facts of *Barlow* differ from those in the present case, our discussion in that case makes clear that the specific language in Practice Book § 1-22 on which the defendant now relies is intended to "give effect" to the mandate in § 51-183c, rather than provide for an independent ground for recusal. See id. To adopt the defendant's position would yield a peculiar result where the judge would be required under the rules of practice to recuse himself from resentencing a defendant after the initial sentence he imposed was reversed, but he would not be required to do so under the statute that the rule was intended to effectuate. As we noted previously, our Supreme Court has concluded that "the legislature did not intend for § 51-183c to apply to a sentencing procedure." *State* v. *Miranda*, supra, 260 Conn. 132. Furthermore, because the rules promulgated by the judges of the Superior Court cannot "abridge, enlarge or modify any substantive right"; General Statutes § 51-14 (a); we conclude that the language in Practice Book § 1-22 (a), which requires disqualification when the "judicial authority previously tried the same matter and . . . the judgment was reversed on appeal," also does not apply to a sentencing procedure.

Accordingly, we conclude that recusal was not required under § 51-183c or Practice Book § 1-22. Thus, the defendant has not demonstrated an abuse of discretion on these grounds.

B

The defendant similarly argues that pursuant to rule

2.11 of the Code of Judicial Conduct, as referenced in Practice Book § 1-22, disqualification was required because the trial court's impartiality reasonably could be questioned. The defendant makes clear that his "claim is not that [the] sentencing court was specifically biased *against* the defendant. Rather, the defendant's claim is that the sentencing court was biased in favor of justifying its initial imposition of a harsh sentence against the defendant." (Emphasis in original.) In support of this contention, he argues, inter alia, that the court's original imposition of a 100 year sentence "had an 'anchoring effect' that prevented the sentencing court from approaching the resentencing hearing with a fully open mind that would allow the court to fully consider the factors required by the rescript from our Supreme Court," and that the court "had an apparent interest in justifying the appropriateness of the original sentence that the court imposed."

Pursuant to rule 2.11 (a) of the Code of Judicial Conduct, "[a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned . . . ." In applying this rule, our Supreme Court has indicated that "[t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted. . . . Our review of the trial court's denial of a motion for disqualification is governed by an abuse of discretion standard." (Citation omitted; internal quotation marks omitted.) *State* v. *Milner*, supra, 325 Conn. 12.

We conclude that the defendant has not satisfied his burden. The defendant's contention that the so-called "anchoring effect" prevented the sentencing court from approaching resentencing with a fully open mind in order to fully consider the *Miller* factors is nothing more than the product of speculation and conjecture.[4] See *State* v. *Montini*, 52 Conn. App. 682, 695, 730 A.2d 76 (explaining that "[v]ague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse" [internal quotation marks omitted]), cert. denied, 249 Conn. 909, 733 A.2d 227 (1999). Although a few federal cases, as cited in the defendant's appellate brief, have given a cursory look at the social science on how human tendencies and biases may influ-

ence sentencing under the federal sentencing guidelines, this alone, without more, is insufficient to show that disqualification was warranted in the present case. Furthermore, the defendant does not explain why only the original sentencing judge would be susceptible to any anchoring effect. Any judge who imposed the new sentence would know of the same prior sentence, or "anchor."

The defendant also argues that a "reasonable person knowing the circumstances under which the case returned to the Superior Court for the resentencing might reasonably question the ability of the original sentencing judge to act impartially when he had already pronounced a 100 year sentence, [and] had already adjudged the defendant's culpability and lack of prospect for rehabilitation." This contention must also be rejected. As the state points out, the defendant's argument, if accepted, ultimately would prevent any original sentencing judge from conducting a resentencing hearing, regardless of whether resentencing occurs pursuant to *Miller*. The mere fact that a trial judge previously had sentenced a defendant in a particular case where resentencing is ordered does not in and of itself establish an appearance of bias or partiality. See *State* v. *Milner*, supra, 325 Conn. 12 ("law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially" [internal quotation marks omitted]).

Furthermore, the underpinnings for the defendant's argument that the "court had an apparent interest in justifying the appropriateness of the original sentence that the court imposed," which is based on, among other things, the various statements he made during the resentencing hearing, is not so apparent to us. In support of his argument, the defendant cites to *State* v. *Solis-Diaz*, 187 Wn. 2d 535, 387 P.3d 703 (2017), in which the Supreme Court of Washington granted review of an intermediate appellate court decision that vacated the defendant's sentence for a second time but declined to disqualify the sentencing judge in that case from resentencing the defendant. Id., 536–37. The Supreme Court of Washington explained that the sixteen year old defendant was tried as an adult in connection with a drive-by shooting and was sentenced to "1,111 months, or 92.6 years, of imprisonment." Id., 537. After the original sentence was vacated by the intermediate court, the trial judge in the case resentenced the defendant to the same sentence of 92.6 years of incarceration. On appeal following the first resentencing, the intermediate court again vacated the sentence and remanded the case for resentencing, "holding that [the judge] erred in not considering an exceptional sentence below the standard range on the basis of [the defendant's] youth and to mitigate the consecutive sentences required under [Washington law]." Id., 539. The court "directed the trial court on resentencing to conduct a

meaningful, individualized inquiry into whether either factor should mitigate the defendant's sentence in light of recent case law." Id. The intermediate court, however, declined to disqualify the judge from presiding over resentencing, noting that the defendant could move to disqualify the judge on remand. Id.

In addressing whether the trial judge should have been disqualified, the Supreme Court of Washington indicated that the record reflected that the judge exhibited "frustration and unhappiness at the [intermediate court's] requiring him to address anew whether [the defendant] should be considered for an exceptional downward sentence on the basis of his age or the multiple offense policy." Id., 541. The court further noted that the "judge's remarks at the first resentencing strongly suggest that, regardless of the information presented in mitigation, he is committed to the original standard range sentence of 1,111 months. Concern about whether on remand [the judge] could exercise discretion and consider mitigating evidence with an open mind is heightened by the judge's statement that the length of the sentence he imposed has had a deterrent effect on incidents of gang-related gun violence in" the area where the crimes at issue had been committed. Id. The Supreme Court of Washington reversed the intermediate court's decision to the extent that it declined to disqualify the judge in the case. Id.

Although the defendant acknowledges that the facts of *Solis-Diaz* vary from the facts in the present case, he asserts that the logic underlying that decision applies here with similar force. We find this case to be readily distinguishable. On the basis of our review of the record, the trial court in this case never expressed that it would not or could not consider the defendant's age as a mitigating factor, nor did it ever express its unwillingness to consider the *Miller* factors or those required by statute during the resentencing. To the contrary, the court repeatedly stated that it would consider the appropriate factors and impose sentence accordingly.[5] The defendant has failed to sufficiently demonstrate how the court's willingness to consider new information at resentencing—i.e., the *Miller* factors—which were not required by law for consideration at the time of the original sentence (nor requested by the defendant to be considered at the original sentencing), constituted actual bias or would lead a reasonable person to question the judge's impartiality on the basis of all the circumstances.[6]

Accordingly, we conclude that court did not abuse its discretion in denying the defendant's motion for recusal pursuant to rule 2.11 (a) (1) of the Code of Judicial Conduct.

## II

The defendant next claims that the trial court violated

the rescript of our Supreme Court's decision in *Riley*, ignored important constitutional principles, and failed to comply with applicable mandatory statutory requirements when it resentenced him to a new effective life sentence of seventy years of incarceration. In particular, he contends that the trial court was required to find specifically that he was "incorrigible, irreparably corrupt, or irretrievably depraved" in order to overcome a presumption against life sentences for juveniles before it imposed its seventy year sentence. Additionally, he argues that the court failed to craft an appropriate new sentence for him because it improperly relied on the parole eligibility provisions of No. 15-84 of the 2015 Public Acts (P.A. 15-84), codified in relevant part at § 54-125a. We disagree.

We briefly set forth additional facts and procedural history necessary for the disposition of this claim. At the conclusion of the defendant's trial in 2009, the trial court imposed a total effective sentence of 100 years imprisonment. *State* v. *Riley*, supra, 315 Conn. 642. It was undisputed that the sentence imposed was the functional equivalent to life without the possibility of parole. Id. After the trial court first sentenced the defendant in this case, the United States Supreme Court issued its decision in *Miller*. Id., 643. On appeal to this court; *State* v. *Riley*, supra, 140 Conn. App. 1; the defendant argued that his sentence and the procedure under which it was imposed violated his rights under the eighth and fourteenth amendments to the federal constitution. Id., 4, 10 and n.7. This court rejected these contentions and concluded that *Miller* required only that a defendant be afforded the opportunity to present mitigating evidence, including evidence relating to his age, and that the court be permitted to impose a lesser sentence than life without parole after considering any such evidence. Id., 10, 14–16. This court also concluded that the trial court, in fact, had considered many of the factors identified as relevant in *Miller* before it imposed the defendant's sentence.[7] Id., 19–20.

On appeal to our Supreme Court, the defendant argued that our decision was incorrect as a matter of law and fact. *State* v. *Riley*, supra, 315 Conn. 643–44. In particular, he argued that the sentencing procedure and the sentence itself failed to conform to the dictates of *Miller* and *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). See *State* v. *Riley*, supra, 644.[8] In addressing his claim, our Supreme Court first summarized the United States Supreme Court's decisions in *Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *Graham*, and *Miller*, which fundamentally altered the legal landscape for the sentencing of juvenile offenders to comport with the ban on cruel and unusual punishment under the eighth amendment to the federal constitution. See *State* v. *Riley*, supra, 645–52.

Our Supreme Court then discussed the import that *Miller* had on discretionary schemes like the one in Connecticut, and it characterized *Miller* as standing for two propositions: "(1) that a lesser sentence than life without parole must be available for a juvenile offender; and (2) that the sentencer must consider age related evidence as mitigation when deciding whether to irrevocably sentence juvenile offenders to a [term of life imprisonment, or its equivalent, without parole]." Id., 653; see *State* v. *Delgado*, 323 Conn. 801, 806, 151 A.3d 345 (2016). The court determined that "the dictates set forth in *Miller* may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that *Miller* deemed constitutionally significant before determining that such a severe punishment is appropriate." *State* v. *Riley*, supra, 315 Conn. 653.

The court in *Riley* went on to recognize that *Miller* held that a sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (Internal quotation marks omitted.) Id., 654, quoting *Miller* v. *Alabama*, supra, 567 U.S. 480. The court then concluded that this mandate logically would extend to a discretionary sentencing scheme. Id., 654. Additionally, our Supreme Court noted that the court in *Miller* "expressed its confidence that, once the sentencing authority considers the mitigating factors of the offender's youth and its attendant circumstances, 'appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.' . . . This language suggests that the mitigating factors of youth establish, in effect, a presumption against imposing a life sentence without parole on a juvenile offender that must be overcome by evidence of unusual circumstances. This presumption logically would extend to discretionary schemes that authorize such a sentence." (Citation omitted.) *State* v. *Riley*, supra, 315 Conn. 654–55.

Our Supreme Court further explained that "*Miller* does not stand solely for the proposition that the eighth amendment demands that the sentencer have discretion to impose a lesser punishment than life without parole on a juvenile homicide offender. Rather, *Miller* logically indicates that, if a sentencing scheme permits the imposition of that punishment on a juvenile homicide offender, the trial court must consider the offender's 'chronological age and its hallmark features' as mitigating against such a severe sentence. *Miller* v. *Alabama*, supra, 567 U.S. 477. As the court in *Miller* explained, those features include: 'immaturity, impetuosity, and failure to appreciate risks and consequences'; the offender's 'family and home environment' and the offender's inability to extricate himself from that environment; 'the circumstances of the homicide offense,

including the extent of [the offender's] participation in the conduct and the way familial and peer pressures may have affected him'; the offender's 'inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys'; and 'the possibility of rehabilitation . . . .'" (Emphasis omitted.) *State* v. *Riley*, supra, 315 Conn. 658.

Our Supreme Court then applied the dictates of *Miller* to the defendant's case. It concluded that "the record [did] not clearly reflect that the court considered and gave mitigating weight to the defendant's youth and its hallmark features when considering whether to impose the functional equivalent to life imprisonment without parole." Id., 660. Accordingly, the court concluded that "the defendant [was] entitled to a new sentencing proceeding that conforms to the dictates of *Miller*. Both the defendant and the state are free to present additional evidence at this new proceeding." Id., 661. The rescript by the court stated: "The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court only with respect to the defendant's sentence and to remand the case to that court for a new sentencing proceeding consistent with this opinion." Id., 663.

Several months after this court remanded the case to the trial court for resentencing, but before the defendant's resentencing hearing, the legislature enacted P.A. 15-84. Section 1 of P.A. 15-84, codified at § 54-125a, ensures that all juveniles who are sentenced to more than ten years imprisonment are eligible for parole. Section 2 of P.A. 15-84, codified as amended at General Statutes § 54-91g, requires a sentencing judge to consider a juvenile's age and any youth related mitigating factors before imposing a sentence following a juvenile's conviction of any class A or class B felony.

On November 2, 2016, the defendant appeared before the trial court for a resentencing hearing pursuant to the rescript of our Supreme Court. During the hearing, the prosecutor argued, inter alia, that the defendant's actions were not the type of youthful impulsivity contemplated in the decisions by the United States Supreme Court or our Supreme Court that deserve leniency. The prosecutor, in describing the defendant's crimes, stated: "That's not impulsivity. That's just pure violence on the part of [the defendant]." The prosecutor proceeded to ask the court to sentence the defendant to 120 years of incarceration, which was also the request made at the defendant's original sentencing.

Defense counsel then addressed the court and highlighted the troubled upbringing the defendant faced. In particular, she described, inter alia, how the defendant, at a young age, was raised in and exposed to a community of violence. Defense counsel stated: "It was not a choice that [the defendant] made at age twelve to be

taken by his mother, who was hiding from immigration and exposed to violence against her, violence on the street." In explaining that the defendant was seventeen years of age at the time he committed the crime in this case, defense counsel stated that it was an "unfortunately narrow understanding of the juvenile brain science to characterize impulsivity, failure to appreciate consequences . . . in the way that it's been represented by the state." Counsel went on to state: "I think we've made an adequate presentation of what the brain science really shows in our submissions to the court and, of course, Your Honor read [the] materials [provided to the court by the court support services division of the Judicial Branch]."[9] Counsel then had the defendant, his aunt, and his cousin address the court.

After the parties concluded their arguments, the court went on to indicate, inter alia, that it was "going to resentence [the defendant] in accordance with the instructions of the state of Connecticut Supreme Court. I'm going to apply the *Miller* factors." From there, the court went on to discuss its awareness of the science that was discussed by the defendant's counsel. In particular, it recognized that "there are changes over time that make a difference in who we are when we're seventeen and who we are when we might be fifty or sixty-nine. So, because of his age, I will assume that [the defendant] was immature and impetuous, and had a diminished capacity to appreciate the risks and consequences of his actions when he was seventeen years old." The court also went on to address, inter alia, the defendant's family and home environment, his presentence investigation report, and the circumstances surrounding the crime. At the conclusion of its remarks, the court sentenced the defendant to a total effective term of seventy years of incarceration and made clear that, pursuant to the recently enacted P.A. 15-84, the defendant was eligible for parole before he reaches the age of fifty. This appeal followed.

The defendant argues that the court violated the rescript of *Riley*, ignored important constitutional principles, and failed to comply with applicable mandatory statutory requirements when it resentenced him. He contends that the trial court was required to explicitly find that he was "incorrigible, irreparably corrupt, or irretrievably depraved" in order to overcome a presumption against life sentences for juveniles before it imposed its seventy year sentence. In particular, he argues that *Riley* interpreted *Miller* to include a presumption against the imposition of a life sentence on a juvenile defendant and argues that this presumption would need to be "overcome by evidence of unusual circumstances" in order for a sentencing court to impose a life sentence. (Internal quotation marks omitted.) He further argues that even if the presumption in *Riley* no longer applies due to a change in the legal landscape in this state, he posits that the language and

legislative history of P.A. 15-84 clearly establish that a presumption against the imposition of a functional life sentence has been adopted by our legislature.

In response, the state argues that the defendant's claim fails because nothing in our law creates a presumption against a lengthy sentence with the possibility of parole or requires the trial court to find that a defendant is incorrigible, irreparably corrupt, or irretrievably depraved before imposing a seventy year sentence with the possibility of parole after thirty years. We agree with the state.

Addressing the defendant's claim necessarily requires us to interpret both the remand order in *Riley* and § 54-91g to determine whether the sentencing court properly resentenced the defendant. As such, our review is plenary. See *State* v. *Brundage*, 320 Conn. 740, 747, 135 A.3d 697 (2016) ("[d]etermining the scope of a remand is a matter of law because it requires the trial court to undertake a legal interpretation of the higher court's mandate in light of that court's analysis" [internal quotation marks omitted]); *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 355, 63 A.3d 940 (2013) ("[t]he interpretation of a statute presents a question of law over which our review is plenary").

The defendant's argument that the sentencing court's seventy year sentence was improper because *Riley* created a presumption against a life sentence and could be overcome only if the court found that the defendant was "incorrigible, irreparably corrupt, or irretrievably depraved" is flawed in several respects.

First, at the time of the defendant's appeal before our Supreme Court, it was undisputed that with this original sentence, the "defendant ha[d] no possibility of parole before his natural life expire[d]." *State* v. *Riley*, supra, 315 Conn. 640. In addressing the import of *Miller* for discretionary sentencing schemes, our Supreme Court in *Riley* interpreted certain language in *Miller* to suggest "that the mitigating factors of youth establish, in effect, a presumption against imposing a life sentence *without parole* on a juvenile offender that must be overcome by evidence of unusual circumstances. This presumption logically would extend to discretionary schemes that authorize such a sentence." (Emphasis added.) Id., 655. Importantly, though, our Supreme Court's discussion referred to mandatory or discretionary *life without parole* sentences, not simply "life sentences" as the defendant asserts in this appeal.

The distinction between a sentence of life without parole and a sentence of life with the possibility of parole is an important one. Between the time at which our Supreme Court reversed the defendant's initial sentence and the time at which his new sentencing hearing was held, the legal landscape in Connecticut, once again, had changed with respect to juvenile sentencing.

See General Statutes §§ 54-91g and 54-125a; see also *Montgomery* v. *Louisiana*, U.S. , 136 S. Ct. 718, 732, 736, 193 L. Ed. 2d 599 (2016) (giving *Miller* retroactive effect and permitting state to remedy *Miller* violation by permitting juvenile homicide offenders to be considered for parole). Although the defendant did not have a possibility of parole when our Supreme Court rendered its decision in *Riley*, the legislature's enactment of P.A. 15-84 provided him, and those similarly situated, with that possibility.[10] Because *Riley*'s discussion about overcoming presumptions referred only to mandatory or discretionary life without parole sentences, the fact that the defendant no longer faced a life sentence without the opportunity of parole at the time of his resentencing rendered this aspect of *Riley* inapplicable to the defendant at the time of resentencing.

Our Supreme Court's decision in *State* v. *Delgado*, supra, 323 Conn. 801, sheds light on the effect that the enactment of P.A. 15-84 had post-*Riley*. In *Delgado*, the court was tasked with determining how the changes in juvenile sentencing law impacted individuals who were sentenced before the changes in juvenile sentencing occurred. Id., 802. The defendant in that case was sentenced in 1996 to sixty-five years of imprisonment without parole for crimes that he committed when he was sixteen years old. Id. Although he had become eligible for parole following the passage of P.A. 15-84, he filed a motion to correct his allegedly illegal sentence, claiming, inter alia, that he was entitled to be resentenced because the judge who sentenced him failed to consider youth related mitigating factors. Id., 805. After discussing its decisions in *Riley*, *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, U.S. , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016), and the United States Supreme Court's decision in *Montgomery* v. *Louisiana*, supra, 136 S. Ct. 718, our Supreme Court concluded that "[b]ecause *Miller* and *Riley* do not require a trial court to consider any particular mitigating factors associated with a juvenile's young age before imposing a sentence that includes an opportunity for parole, the defendant can no longer allege, after the passage of P.A. 15-84, that his sentence was imposed in an illegal manner on the ground that the trial court failed to take these factors into account." *State* v. *Delgado*, supra, 812. Accordingly, the resentencing court in the present case was not required under *Riley* to make any particular finding that the defendant was "incorrigible, irreparably corrupt, or irretrievably depraved" before resentencing him to a seventy year term of imprisonment when he was eligible for parole after thirty years.

The defendant next argues that even if the enactment of § 54-125a, which created a possibility of parole for him, made certain principles in *Riley* inapplicable to him, the language and legislative history of P.A. 15-84 clearly establish a presumption against the imposition

of a functional life sentence. He avers that the practical effect of *Miller*, *Riley*, and our legislature's enactment of P.A. 15-84 was to "significantly limit a sentencing court's discretion when imposing a sentence on a juvenile." He again asserts that this "limitation creates a presumption against the imposition of a life sentence on a juvenile defendant, and such exceedingly rare sentences can only be imposed after a specific finding that the juvenile being sentenced is permanently incorrigible, irreparably corrupt, or irretrievable depraved."

We turn our attention to the language of § 2 of P.A. 15-84, codified at § 54-91g,[11] which requires the trial court to consider certain factors before sentencing a juvenile convicted of a class A or B felony. Section 54-91g (a) provides in relevant part that a court shall "(1) [c]onsider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development," and shall "(2) [c]onsider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence."

The plain and unambiguous language of the statute makes clear what a court must consider when sentencing a child convicted of an A or B felony. Although the defendant asserts that the statute creates a presumption against the imposition of a life sentence and requires a finding that the juvenile being sentenced is "permanently incorrigible, irreparably corrupt, or irretrievable depraved" in order to overcome that presumption, our review of the statute reveals no language to support the defendant's contention. Even if we assume, as do the parties, that the defendant's seventy year sentence in this case constitutes a "lengthy sentence under which it is likely [he] will die while incarcerated"; General Statutes § 54-91g (a) (2); the sentencing court was required to *consider* only "how the scientific and psychological evidence described in subdivision (1) of [§ 54-91g (a)] counsels against such a sentence." General Statutes § 54-91g (a) (2). The express language of the statute makes no reference to a presumption or a specific finding that the court was required to make in order to overcome that purported presumption.

Last, the defendant argues that the trial court also failed to craft an appropriate new sentence for him because it improperly relied on the parole eligibility provisions of § 1 of P.A. 15-84, codified at § 54-125a. In particular, he argues that the court failed to consider sufficiently the "*Miller* factors" in crafting a new sentence and, instead, relied "heavily upon the availability of a future parole opportunity for the defendant to

lessen the sentencing court's responsibility to fully weigh the factors relevant to the defendant's youth at the time of the crimes."[12] In essence, the defendant argues that the trial court imposed a sentence that it knew to be disproportionate because it knew that the defendant would be eligible for parole. We disagree.

A careful review of the record reveals that the court properly complied with our Supreme Court's decision in *Riley* and the requirements of § 54-91g. To begin, the court made clear at various times during the sentencing hearing its duty and intention to comply with our Supreme Court's decision in *Riley*. In particular, the court indicated that it was "going to resentence [the defendant] in accordance with the instructions of the State of Connecticut Supreme Court. I'm going to apply the *Miller* factors." During its colloquy, the court also indicated that it was "not here to argue the correctness or the wisdom of the cases that got us all here, *Roper*, *Graham*, *Miller*, *Montgomery* and the state of Connecticut versus [the defendant]. I mean, those courts have spoken." The court stated: "I'm a trial judge. I'm a servant of the law. I accept the rulings from the next level. I will note that *Graham*, *Miller* and *Montgomery*, I believe, all were decided after this case. There was no way that trial Judge O'Keefe here on Lafayette Street in [the geographical area number fourteen court in Hartford in] . . . 2009, had access to the logic and the reasoning of those cases."

The court went on to consider, among other things, the defendant's presentence investigation report, testimony from the defendant and his family members, and other aspects of the defendant's upbringing. Particularly important to the present appeal, the court fully considered, despite the defendant's arguments to the contrary, the *Miller* factors and those factors required under § 54-91g. The court recognized that "because of [the defendant's] age at the time of the crime that he committed, [he] was different than [an] adult." The court went on to state: "I am aware of the science that now supports that view. That there are changes over time that make a difference in who we are when we're seventeen and who we are when we might be fifty or sixty-nine. So, because of his age, I will assume that he was immature and impetuous and had a diminished capacity to appreciate the risks and consequences of his actions when he was seventeen years old."

The court then went on to state, inter alia, that "[t]here's no evidence to the contrary that he wasn't immature, impetuous or did not have a diminished capacity to appreciate the risks and the consequences of his actions. None of this activity that he was engaged in over a long period of time makes sense at all. There really was no good motive for this."

In addition to recognizing and discussing the defendant's age, the hallmark features of adolescence, the

relevant science distinguishing a child's development from that of an adult's, and other mitigating factors, the court also balanced them with the "horrific circumstances of the crime." The court made note that it was significant that the defendant had "been involved in the death of two people and the wounding of three or four others over a period of time, not just on a single day." The court noted that the crimes took place "over a period of months where [the defendant] had time to contemplate what he was doing, and the effect that it would have on other people and other people's lives."[13] The court indicated that it had "no way to see into the future" or whether the defendant was "ever going to be rehabilitated."

As the defendant points out in his appellate brief, the court at various times did refer to his eligibility for parole. For instance, the court noted that "[o]ur legislature has addressed this, and no matter what sentence I give, as we all agree, as long as it's longer than fifty years, will result in a parole hearing, approximately thirty years." But the defendant's argument that the court's discussion of parole eligibility during the hearing was the "main focal point" of the court's sentencing decision and that the court failed to fully weigh the factors relevant to the defendant's youth at the time of the crimes, finds little support in the record and is contradicted by the express statements of the court. For example, at one point during the hearing, the court stated: "I get why I'm sentencing him. And I agree that it's necessary. I'm not going to say I'm not going to sentence him because he has a chance for a parole hearing. I'm going to sentence him in accordance with *Miller* as instructed by [our Supreme Court]." Additionally, as previously discussed, the court thoroughly went through the factors relevant to the defendant's youth. It discussed, inter alia, the defendant's age, the hallmark features of adolescence as they pertained to the defendant, and noted that it had reviewed the science discussed in *Riley* and § 54-91g.

In addition, as the state points out, the court in fact was required by statute to inform the defendant of his parole eligibility. See General Statutes § 54-91g (c). Section 54-91g (c) provides: "Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a." Although the trial court did reference the defendant's eligibility of parole multiple times during its lengthy colloquy, we have found no indication in the record that the trial court considered the seventy year sentence to be inappropriate but nevertheless imposed it because the defendant would be eligible for parole.

On the basis of our review of the record, we conclude

that the defendant properly was resentenced by the trial court in accordance with our Supreme Court's remand order in *Riley*, the applicable statutory authorities, and the constitutional principles contemplated in those authorities.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In *Miller*, the Supreme Court made clear that "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys." *Miller* v. *Alabama*, supra, 567 U.S. 477–78.

Our Supreme Court has characterized *Miller* as standing for two propositions: "(1) that a lesser sentence than life without parole must be available for a juvenile offender; and (2) that the sentencer must consider age related evidence as mitigation when deciding whether to irrevocably sentence juvenile offenders to a [term of life imprisonment, or its equivalent, without parole]." *State* v. *Riley*, supra, 315 Conn. 653. These age related considerations, as described in this footnote, have been colloquially referred to as the "*Miller* factors."

[2] General Statutes § 51-183c provides: "No judge of any court who tried a case without a jury in which a new trial is granted, or in which the judgment is reversed by the Supreme Court, may again try the case. No judge of any court who presided over any jury trial, either in a civil or criminal case, in which a new trial is granted, may again preside at the trial of the case."

[3] We note that the defendant acknowledges in his appellate brief that the "Connecticut Supreme Court has previously held that [§ 51-183c] is not applicable to sentencing proceedings that are the result of a case being remanded for a new sentencing consistent with a reversal by a reviewing tribunal." Despite this, he argues tenuously that *Miranda* is distinguishable because that case was remanded to the trial court for resentencing pursuant to the aggregate package theory, whereas the present case was remanded pursuant to *Miller*. He also appears to argue that because the defendant in *Miranda* "essentially sought an advisory opinion" from our Supreme Court, the rationale in *Miranda* should not be followed in the present case. These arguments lack merit.

[4] In support of his argument, the defendant relies on *United States* v. *Navarro*, 817 F.3d 494, 501–502 (7th Cir. 2016), which cites to *United States* v. *Ingram*, 721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring) (discussing how "anchoring effects" influence judgments and noting that court "cannot be confident that judges who begin" at a higher guidelines range "would end up reaching the same 'appropriate' sentence they would have reached" if they started from lower guidelines range), and multiple articles about the so-called "anchoring effect." One of the cited articles explains that "[a]nchoring is a cognitive bias that describes the human tendency to adjust judgments or assessments higher or lower based on previously disclosed external information—the 'anchor.' Studies demonstrate 'that decisionmakers tend to focus their attention on the anchor value and to adjust insufficiently to account for new information.' Cognitive psychology teaches that the anchoring effect potentially impacts a huge range of judgments people make. . . . [R]epeated studies show that the 'anchor' produces an effect on judgment or assessment even when the anchor is incomplete, inaccurate, irrelevant, implausible, or random. When it comes to numbers, '[o]verwhelming psychological research demonstrates that people estimate or evaluate numbers by 'anchoring' on a preliminary number and then adjusting, usually inadequately, from the initial anchor." (Footnotes omitted.) M. Bennett, "Confronting Cognitive 'Anchoring Effect' and 'Blind Spot' Biases in Federal Sentencing: A Modest Solution for Reforming A Fundamental Flaw," 104 J. Crim. L. & Criminology 489, 495 (2014).

[5] For example, the court indicated that it was "going to resentence [the

defendant] in accordance with the instructions of the state of Connecticut Supreme Court. I'm going to apply the *Miller* factors." During its colloquy, the court also indicated that it was "not here to argue the correctness of the wisdom of the cases that got us all here, [*Roper* v. *Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *Graham* v. *Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), *Miller* v. *Alabama*, supra, 567 U.S. 460, *Montgomery* v. *Louisiana*,      U.S.      , 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)], and the state of Connecticut versus [the defendant]. I mean, those courts have spoken." The judge made clear that he was "a servant of the law" and accepted "the rulings from the next level."

[6] The defendant also argues in his appellate brief that the due process clauses of the fifth and fourteenth amendments to the United States constitution are another basis for recusal, but does not provide a separate analysis of this distinct aspect of his claim. Instead, he states: "Because the Code of Judicial Conduct's language related to the possibility of partiality is substantially similar to the United States Supreme Court's articulation of the test for whether recusal is required by the due process clauses of the United States Constitution, the defendant analyzes these two bases for recusal simultaneously . . . ."

Although there may be similarities between the two standards, a review of Supreme Court precedent suggests that they differ. See *Rippo* v. *Baker*,      U.S.      , 137 S. Ct. 905, 907, 197 L. Ed. 2d 167 (2017) ("[u]nder our precedents, the Due Process Clause may sometimes demand recusal even when a judge ha[s] no actual bias" [internal quotation marks omitted]); *Williams* v. *Pennsylvania*,      U.S.      , 136 S. Ct. 1899, 1905, 195 L. Ed. 2d 132 (2016) ("[T]he Court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present. The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." [Internal quotation marks omitted.]); *Withrow* v. *Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) (recusal required when "probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable").

We similarly conclude that the circumstances of this case, as we view them, simply do not rise to a due process violation under the Supreme Court's precedents because, objectively considered, they do not pose "such a risk of actual bias or prejudgment" as to require disqualification. (Internal quotation marks omitted.) *Caperton* v. *A. T. Massey Coal Co.*, 556 U.S. 868, 884, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009).

[7] Justice Borden dissented in the case. *State* v. *Riley*, supra, 140 Conn. App. 21 (*Borden*, *J.*, dissenting). He disagreed with each of the majority's determinations and concluded that the defendant was entitled to a new sentencing proceeding. Id., 23–40.

[8] We note that our Supreme Court declined to address the defendant's *Graham* claim. It noted that the "legislature has received a sentencing commission's recommendations for reforms to our juvenile sentencing scheme to respond to the dictates of *Graham* and *Miller*. Therefore, in deference to the legislature's authority over such matters and in light of the uncertainty of the defendant's sentence upon due consideration of the *Miller* factors, we conclude that it is premature to determine whether it would violate the eighth amendment to preclude any possibility of release when a juvenile offender receives a life sentence." *State* v. *Riley*, supra, 315 Conn. 641.

[9] The defendant filed a sentencing memorandum to the court dated October 31, 2016, which provided, among other things, a section addressing the "The Mitigating Characteristics of the Juvenile Brain." In addition, attached to his memorandum, the defendant provided the court with a copy of the court support services division's compilation of reference materials relating to adolescent psychological and brain development, which are intended to assist courts in sentencing children. See General Statutes § 54-91g (d).

[10] General Statutes § 54-125a (f) (1) provides: "Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years

or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (e), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions."

[11] General Statutes § 54-91g provides: "(a) If the case of a child, as defined in section 46b-120, is transferred to the regular criminal docket of the Superior Court pursuant to section 46b-127 and the child is convicted of a class A or B felony pursuant to such transfer, at the time of sentencing, the court shall: (1) Consider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development; and (2) Consider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence.

"(b) Notwithstanding the provisions of section 54-91a, no presentence investigation or report may be waived with respect to a child convicted of a class A or B felony. Any presentence report prepared with respect to a child convicted of a class A or B felony shall address the factors set forth in subparagraphs (A) to (D), inclusive, of subdivision (1) of subsection (a) of this section.

"(c) Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a.

"(d) The Court Support Services Division of the Judicial Branch shall compile reference materials relating to adolescent psychological and brain development to assist courts in sentencing children pursuant to this section."

[12] In his appellate brief, the defendant often uses the phrase, "*Miller* factors," when discussing both the requirements pursuant to § 54-91g and our Supreme Court's holding in *Riley*. See footnote 1 of this opinion. Section 54-91g (a) (1), however, only requires consideration of "the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development." The state makes clear that it does not concede that the statute requires consideration of every factor set forth in *Miller*. We need not decide, however, that issue in this case because, as we explain subsequently, it is clear from the record that the court considered each of the "*Miller* factors."

[13] The court's reference to these crimes that took place "over a period of months" was based, in part, on new information presented to the court by the prosecution. During the resentencing hearing, the prosecutor made clear to the court that there was new information before it that was not previously available to it at the time of the defendant's original sentencing. Namely, the prosecutor discussed other crimes, aside from the crimes in the present case, to which the defendant had pleaded guilty, to wit, a drive-by shooting that left a fifteen year old boy dead and, on a separate occasion, an incident where the defendant and others "proceeded to unload twenty-four rounds at close range," resulting in one man's "permanent paralyzation." The prosecutor stated: "Your Honor didn't have the benefit of knowing [this information] at the time you sentenced him to 100 years in this case. You do have the benefit now. Not only do you know that [the] other murder happened before this killing and was pending thereafter, but he subsequently pleaded guilty to that murder and to the assault."

During the court's colloquy, it went on to address, inter alia, the significance of the defendant's actions on these separate occasions. It stated: "The most significant factor in this sentencing is his involvement in the murder of Tray Davis on Garden Street on November 17, 2006. Other significant factors are his wounding of two other innocent people on a different day. Another factor is his murder on a third occasion. These events can't be ignored."