PALMER, J.
**686 *81 The plaintiff, Trinity Christian School, appeals from the judgment of the trial court, which dismissed the plaintiff's administrative appeal from the decision of the named defendant, the Commission on Human Rights and Opportunities (commission), for lack of subject matter jurisdiction. The commission had denied the plaintiff's motion to dismiss an employment discrimination complaint brought by a former female employee,[1] who claims that the plaintiff unlawfully terminated her employment on the basis of her sex, marital status and pregnancy, in violation of state and federal employment discrimination laws. The plaintiff appealed from that decision to the Superior Court, claiming that court had jurisdiction to entertain the plaintiff's interlocutory appeal because General Statutes § 52-571b (d),[2] which bars the state from burdening any religious **687 belief, immunizes religious institutions, such as the plaintiff, from employment discrimination actions, and, therefore, the plaintiff was entitled to appeal from that decision under the immunity exception to the general prohibition against such interlocutory appeals. The trial court disagreed, concluding that § 52-571b (d) is not an immunity provision, and, as a consequence, the commission's denial of the plaintiff's motion to dismiss is not an immediately appealable order. The trial court therefore granted the commission's motion to dismiss the plaintiff's administrative appeal. On appeal to this court,[3] the plaintiff raises the *82 same jurisdictional claim that it asserted in the trial court. We agree with the reasoning and conclusion of the trial court, and, therefore, we affirm its judgment dismissing the plaintiff's appeal. **688 The following undisputed facts and procedural history are relevant to our resolution of this appeal. The plaintiff is a religious school located in the town of Windsor. On April 19, 2011, a former female employee filed a complaint with the commission, alleging that the plaintiff had terminated her employment on the basis of her sex, marital status and pregnancy, in violation of the Connecticut Fair Employment Practices Act, General Statutes §§ 46a-58 and 46a-60 (a) (1) and (7), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. (2012). The plaintiff subsequently moved to dismiss the complaint on the ground that it was immune from employment discrimination actions under the ministerial exception to employment discrimination laws, which is grounded in the first amendment to the United States constitution and "requires secular institutions to defer to the decisions of religious institutions in their employment relations with their religious employees" because "administrative and judicial intervention in religious employment relationships would violate the constitutional prohibition against civil entanglement in ecclesiastic disputes." (Internal quotation marks omitted.) Dayner v. Archdiocese of Hartford , 301 Conn. 759, 777, 23 A.3d 1192 (2011).
The commission denied the plaintiff's motion to dismiss the complaint, and the plaintiff appealed to the Superior Court. The commission moved to dismiss the plaintiff's appeal on the ground that the commission's denial of the plaintiff's motion to dismiss was not an immediately appealable order under Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission , 565 U.S. 171, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012) ( Hosanna-Tabor ), a then recent decision of the United States Supreme Court in which the court held that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar **689 [to such a claim] ... because the issue presented by the exception is whether the allegations the plaintiff makes entitle him to relief, not whether the court has [the] power to hear [the] case," and trial courts "have power to consider [employment discrimination] claims ... and to decide whether [such] claim[s] can proceed or [are] instead barred by the ministerial exception."[4] (Internal quotation marks omitted.) *83 Id., at 195 n.4, 132 S.Ct. 694. The trial court agreed that Hosanna-Tabor was controlling of the plaintiff's appeal and granted the commission's motion to dismiss for lack of a final judgment. **690 Upon returning to the commission, the plaintiff filed a second motion to dismiss, this time asserting that religious institutions are immune from employment discrimination complaints under § 52-571b (d) and that, as a consequence, the commission lacked jurisdiction over the former employee's complaint. The commission disagreed and denied the plaintiff's motion to dismiss the complaint, and the plaintiff again appealed to the Superior Court. The commission once again moved to dismiss the plaintiff's appeal, claiming that § 52-571b (d) is not an immunity statute and, therefore, that the commission's denial of the plaintiff's motion to dismiss the employment discrimination complaint was not an immediately appealable interlocutory order under General Statutes § 4-183 (b).[5] The trial court agreed with the commission and granted its motion to dismiss the plaintiff's appeal. In so doing, the trial court explained that § 52-571b was enacted in 1993 in response to Employment Division, Dept. of Human Resources v. Smith , 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), in which the United States Supreme Court held that the compelling governmental interest test that previously had been applied to governmental burdens on the free exercise of religion; see, e.g., Sherbert v. Verner , 374 U.S. 398, 403, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) ; did not apply to burdens that result from the enforcement of generally applicable laws.[6] See Employment Division, Dept. of Human Resources v. Smith , supra, at 882-89, 110 S.Ct. 1595. The court in Smith reasoned, rather, that "the sounder approach, and the approach in accord with the vast majority of [United States Supreme Court] precedents, **691 is to hold the [compelling governmental interest] test inapplicable to such challenges.... To make an individual's obligation to obey ... a law contingent [on] the law's coincidence with his religious beliefs, except [when] the [s]tate's interest is compelling-permitting him, by virtue of his beliefs, to become a law unto himself ... contradicts both constitutional tradition and common sense." (Citations omitted; internal quotation marks omitted.) Id., at 885, 110 S.Ct. 1595.
The trial court further explained that, following Smith , the legislature enacted § 52-571b to ensure greater protection for *84 the free exercise of religion under state law than is provided under the federal constitution in the aftermath of Smith . To that end, the court explained that "subsections (a) and (b) [of § 52-571b provide] that, even in the case of a rule of general applicability, the compelling state interest test applies before the state can burden the exercise of religion. Subsection (c) essentially provides that, unless the state can meet the compelling state interest test, a person may assert a violation of his or her exercise of religion in a 'claim or defense' against the state." The trial court further explained, however, that subsection (d) of § 52-571b, which provides that "[n]othing in this section shall be construed to authorize the state or any political subdivision of the state to burden any religious belief," was merely intended to clarify that the compelling governmental interest test applied to governmental burdens on the free exercise of religion was not intended to apply to governmental burdens on religious beliefs such that, "in theory, even a compelling state interest such as the prevention of discrimination in employment cannot overcome [a religious institution's] reliance on the ministerial exception [as an affirmative defense to an employment discrimination action brought by one of its ministers or clergy]." **692 The trial court therefore concluded that § 52-571b (d), as evidenced by its plain and unambiguous terms, operates as a rule of construction rather than a grant of immunity-the effect of which was to retain "the ministerial exception [as] an affirmative defense, as provided by Hosanna-Tabor , but one ... not subject to offset by a compelling governmental interest." In reaching its conclusion, the trial court emphasized that statutes purporting to confer immunity from suit must be strictly construed. In this regard, the court observed that there was nothing in the language of subsection (d) that reasonably could be construed as conferring immunity on the plaintiff. On the contrary, the court explained, "[t]he language of [subsection] (d) stands in stark contrast to the [language of] many other statutes in the same title ... that do confer statutory immunity. This language usually takes the form of 'shall not be liable,' 'no action may be brought,' or 'shall be immune from civil liability.' " Accordingly, the trial court concluded that the plaintiff had failed to make a colorable claim of immunity under § 52-571b (d), and, as a result, the commission's denial of the plaintiff's motion to dismiss the employment discrimination complaint was not an immediately appealable order. On appeal to this court from the judgment of the trial court dismissing its appeal, the plaintiff renews its claim that § 52-571b (d) confers on religious institutions immunity from employment discrimination actions. We reject the plaintiff's claim for the reasons set forth by the trial court.
"As a threshold matter, we address our standard of review. We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary.... A brief overview of the statutory scheme that governs administrative appeals ... is necessary to our resolution of this issue. There is no absolute right of appeal to the **693 courts from a decision of an administrative agency.... Appeals to the courts from administrative [agencies] exist only under statutory authority .... Appellate jurisdiction is derived from the ... statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed.... In the absence of statutory authority, therefore, there is no right of appeal from [an agency's] decision ...." (Citation omitted; internal quotation marks omitted.) *85 Nine State Street, LLC v. Planning & Zoning Commission , 270 Conn. 42, 45-46, 850 A.2d 1032 (2004).
The right to appeal from an agency decision to the Superior Court is generally limited to final decisions of the agency. See General Statutes § 4-183 (a) ("[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section"); see also State v. State Employees' Review Board , 231 Conn. 391, 402, 650 A.2d 158 (1994) ("a trial court has subject matter jurisdiction over an administrative appeal only if the administrative agency has rendered a final decision"). When the agency has not yet issued a final decision, § 4-183 (b) permits a party to "appeal a preliminary, procedural or intermediate agency action or ruling to the Superior Court if (1) it appears likely that the person will otherwise qualify under ... chapter [54] to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy." It is settled law that "a colorable claim to a right to be free from an action is protected from the immediate and irrevocable loss that would be occasioned by having to defend an action through the availability of an immediate interlocutory appeal from the denial of a motion to dismiss." Dayner v. Archdiocese of Hartford , supra, 301 Conn. at 771, 23 A.3d 1192 ; see id. ("the essence of the protection of immunity from suit is an entitlement not to stand trial or face the **694 other burdens of litigation" [internal quotation marks omitted] ); see also Convalescent Center of Bloomfield, Inc . v. Dept. of Income Maintenance , 208 Conn. 187, 194, 544 A.2d 604 (1988) ("[w]e have held an interlocutory order to be final for purposes of appeal if it involves a claimed right the legal and practical value of which would be destroyed if it were not vindicated before trial" [internal quotation marks omitted] ).
Finally, whether § 52-571b (d) confers on religious institutions immunity from employment discrimination actions presents a question of statutory interpretation over which we exercise plenary review. See, e.g., State v. Lima , 325 Conn. 623, 629 n.4, 159 A.3d 651 (2017). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply.... In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Fedus v. Planning & Zoning Commission , 278 Conn. 751, 756, 900 A.2d 1 (2006).
Applying these principles to the statutory language at issue, we conclude that the trial court correctly determined that § 52-571b (d) does not purport to confer on religious institutions immunity from employment discrimination actions but, rather, operates as a rule of construction for the whole of § 52-571b, the purpose of which is to clarify that the compelling governmental interest test applied under subsections (a) and (b) does **695 not apply to governmental burdens on religious beliefs , which, in this state, remain *86 strictly prohibited even after Smith .[7] See Employment Division, Dept. of Human Resources v. Smith , supra, 494 U.S. at 877, 110 S.Ct. 1595 ("The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires. Thus, the [f]irst [a]mendment obviously excludes all governmental regulation of religious beliefs as such.... The government may not compel affirmation of religious belief ...." [Citation omitted; emphasis omitted; internal quotation marks omitted.] ). Most significantly, there is simply nothing in the language of § 52-571b (d) to indicate that it serves as a grant of immunity from suit. Indeed, as the trial court observed, the language of subsection (d) is typical of internal rules of construction appearing throughout the General Statutes and title 52. See, e.g., General Statutes § 52-146t (j) ;[8] General Statutes § 52-190b ;[9] **696 General Statutes § 52-225d (g) ;[10] General Statutes § 52-225l (e) ;[11] General Statutes § 52-292 ;[12] General Statutes § 52-557q.[13]
That subsection (d) was intended to operate as a rule of construction rather than a grant of immunity is further evidenced by the dissimilarity between its language and the language of statutes that do confer immunity. As the trial court *87 observed, a cursory review of title 52 makes clear that when the legislature intends to confer immunity from liability or from suit, it does so in distinctive and unmistakable terms, such as "shall not be liable,"[14] "no action may be brought,"[15] "shall be **697 immune from civil liability,"[16] or by using other similar language.[17] Under well established rules of statutory construction, we must assume that, if the legislature had intended to confer immunity under § 52-571b (d), it would have done so in the same explicit manner that it has granted immunity in other statutes. See Hatt v. Burlington Coat Factory , 263 Conn. 279, 310, 819 A.2d 260 (2003) ("[When] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject ... is significant to show that a different intention existed.... That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [inaction] will have [on] any one of them." [Internal quotation marks omitted.] ). Indeed, it is a "bedrock principle [of statutory construction] that the legislature is fully capable of enacting legislation consistent with its intent"; State v. Lima , supra, 325 Conn. at 631, 159 A.3d 651 ; particularly when the legislation involves the granting or curtailment of statutory or common-law immunity. "It is not the province of this court, under the guise of statutory interpretation, to legislate ... a [particular] policy, even if we were to agree ... that it is a better policy than the one endorsed by the legislature as reflected in its statutory **698 language."[18] *88 DiLieto v. County Obstetrics & Gynecology Group, P.C. , 316 Conn. 790, 803-804, 114 A.3d 1181 (2015) ; see also State v. Whiteman , 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]t is not the function of courts to read into clearly expressed legislation provisions [that] do not find expression in its words" [internal quotation marks omitted] ).
The plaintiff maintains, nevertheless, that § 52-571b (d) is ambiguous as to whether it confers immunity, and, therefore, this court may consult the statute's legislative history to ascertain its meaning. The plaintiff further contends that the legislative history "strongly supports" the view "that the legislature did not intend for the statute to serve [merely] as an affirmative defense but, rather, intended [it] to shield the employment practices of religious institutions with immunity." This intention, the plaintiff argues, although not explicit in the legislative history, inheres in the legislature's decision, as explained in Rweyemamu v. Commission on Human Rights & Opportunities , 98 Conn. App. 646, 911 A.2d 319 (2006), cert. denied, 281 Conn. 911, 916 A.2d 51, cert. denied, 552 U.S. 886, 128 S.Ct. 206, 169 L.Ed.2d 144 (2007), to exempt religious beliefs from the purview of the statute.
Even if we agreed with the plaintiff that § 52-571b (d) is ambiguous-and we do not-we disagree that the Appellate Court's discussion of the relevant legislative history in Rweyemamu supports the plaintiff's statutory interpretation. In that case, the Appellate Court rejected a claim by a Roman Catholic priest that § 52-571b was intended to overrule the ministerial exception and subject the employment decisions of religious institutions **699 to the compelling governmental interest test. See id., at 655-56, 664-65, 911 A.2d 319. As the plaintiff acknowledges, in addressing the priest's claim in Rweyemamu , the Appellate Court had no occasion to consider whether § 52-571b (d) operates as a jurisdictional bar to employment discrimination claims involving religious institutions. The issue before the Appellate Court in Rweyemamu , rather, was whether such claims are subject to the compelling governmental interest test set forth in subsection (b) of the statute. See id., at 665, 911 A.2d 319.
In concluding that they are not, the Appellate Court noted that the legislative history made clear that the purpose underlying the statute was to reverse the effects of Smith by restoring the strict scrutiny test for governmental burdens on religious practices. Id., at 660-61, 911 A.2d 319. The court further noted, however, that, "[i]n protecting the religious practices of individuals, the legislature made the distinction between the 'exercise of religion,' which it protected with the strict scrutiny test found in [subsection] ... (b) of § 52-571b, and 'religious beliefs,' which [it] prevented from being burdened by subsection (d)." Id., at 662, 911 A.2d 319. The court then explained that, prior to the enactment of § 52-571b, federal law had long treated governmental burdens on religious practices and religious beliefs differently, applying strict scrutiny to the former while completely forbidding the latter. See id., at 663-64, 911 A.2d 319. The court also explained that, prior to the enactment of the statute, the United States Supreme Court had consistently treated the employment decisions of religious institutions as a form of religious belief. See id., at 662, 911 A.2d 319. The Appellate Court concluded that, because the legislature is assumed to know the status of the law when it enacts legislation, the legislature clearly had intended, by exempting religious beliefs from the purview of § 52-571b, to maintain the legal distinction between religious practices and religious beliefs that always had existed and continued to **700 exist after the United States Supreme Court decided Smith . See id., at 664, 911 A.2d 319. *89 The plaintiff argues, however, that, because § 52-571b provides greater protection for religious beliefs than for religious practices, the only reasonable conclusion to be drawn is that the legislature intended for § 52-571b (d) to operate as a jurisdictional bar to employment discrimination actions. This is so, the plaintiff maintains, because only a jurisdictional bar could provide more protection than strict scrutiny review. As we have explained, however, the text of the statute belies the intention that the plaintiff would have us attribute to the legislature, a conclusion that is reinforced by the language of the numerous statutes that do confer immunity. Nor is there any indication in the legislative history that the legislature contemplated that § 52-571b (d) would operate as a jurisdictional bar. As the Appellate Court explained in Rweyemamu , although the legislative history reveals "that the legislature was, in general, mindful of the impact that Smith might have had on employment discrimination laws," its primary focus "[was on] protecting individual religious practices through [the application of] the strict scrutiny test."[19] Id., at 661-62, 911 A.2d 319. We note, moreover, that it was not until more than fifteen years after the passage of the statute that this court, in Dayner v. Archdiocese of Hartford , supra, 301 Conn. at 774, 23 A.3d 1192, recognized the ministerial exception as a jurisdictional bar to employment discrimination actions. As we previously noted, however; see **701 footnote 4 of this opinion; that decision was short-lived in light of Hosanna-Tabor , which followed soon thereafter. Thus, to the extent the plaintiff contends that § 52-571b was intended to codify the ministerial exception, even if this were true, there is still no reason to conclude that the legislature intended the exception to operate as a jurisdictional bar rather than as an affirmative defense.[20]
The judgment is affirmed.
In this opinion the other justices concurred.

The employee was also named as a defendant in the plaintiff's administrative appeal.

General Statutes § 52-571b, which is modeled after the federal Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb through 2000bb-4 (2012), provides: "(a) The state or any political subdivision of the state shall not burden a person's exercise of religion under section 3 of article first of the Constitution of the state even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
"(b) The state or any political subdivision of the state may burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest, and (2) is the least restrictive means of furthering that compelling governmental interest.
"(c) A person whose exercise of religion has been burdened in violation of the provisions of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the state or any political subdivision of the state.
"(d) Nothing in this section shall be construed to authorize the state or any political subdivision of the state to burden any religious belief.
"(e) Nothing in this section shall be construed to affect, interpret or in any way address that portion of article seventh of the Constitution of the state that prohibits any law giving a preference to any religious society or denomination in the state. The granting of government funding, benefits or exemptions, to the extent permissible under the Constitution of the state, shall not constitute a violation of this section. As used in this subsection, the term 'granting' does not include the denial of government funding, benefits or exemptions.
"(f) For the purposes of this section, 'state or any political subdivision of the state' includes any agency, board, commission, department, officer or employee of the state or any political subdivision of the state, and 'demonstrates' means meets the burdens of going forward with the evidence and of persuasion."

The plaintiff appealed to the Appellate Court from the judgment of the trial court in accordance with General Statutes § 4-184, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The ministerial exception was first recognized by the United States Supreme Court in Hosanna-Tabor , in which the court explained the rationale underlying the exception as follows: "The members of a religious group put their faith in the hands of their ministers. Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes [on] more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the [f]ree [e]xercise [c]lause [of the first amendment to the United States constitution], which protects a religious group's right to shape its own faith and mission through its appointments. According the state the power to determine which individuals will minister to the faithful also violates the [e]stablishment [c]lause [of the first amendment], which prohibits government involvement in such ecclesiastical decisions."Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission , supra, 565 U.S. at 188-89, 132 S.Ct. 694.
We note that the court's decision in Hosanna-Tabor resolved a split among the federal circuit courts of appeals as to whether the ministerial exception operated as a jurisdictional bar to employment related claims against religious institutions or was merely an affirmative defense to such claims. See id., at 195 n.4, 132 S.Ct. 694. Several months before Hosanna-Tabor was decided, this court followed the lead of the Second Circuit Court of Appeals in Rweyemamu v. Cote , 520 F.3d 198, 208-209 (2d Cir. 2008), and held that the exception was a jurisdictional bar to suit. See Dayner v. Archdiocese of Hartford , supra, 301 Conn. at 774, 784, 23 A.3d 1192. That decision, of course, was short-lived in light of the United States Supreme Court's holding in Hosanna-Tabor that the exception operates as an affirmative defense to an otherwise cognizable employment discrimination claim rather than a jurisdictional bar. Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission , supra, 565 U.S. at 195 n.4, 132 S.Ct. 694 ; see, e.g., State v. Dukes , 209 Conn. 98, 113, 547 A.2d 10 (1988) (recognizing United States Supreme Court's "full and complete" authority on issues of federal constitutional law).

General Statutes § 4-183 (b) provides: "A person may appeal a preliminary, procedural or intermediate agency action or ruling to the Superior Court if (1) it appears likely that the person will otherwise qualify under ... chapter [54] to appeal from the final agency action or ruling and (2) postponement of the appeal would result in an inadequate remedy."

Although Smith was decided in the context of a generally applicable criminal law, its holding pertains equally in the civil law context.

The United States Supreme Court explained the basis for the disparate treatment afforded religious beliefs and religious practices in Cantwell v. Connecticut , 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) : "The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus the [first] [a]mendment embraces two concepts-freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society ." (Emphasis added.) Id., at 303-304, 60 S.Ct. 900.

General Statutes § 52-146t (j) provides: "Nothing in subsections (a) to (i), inclusive, of this section shall be construed to deny or infringe the rights of an accused in a criminal prosecution guaranteed under the sixth amendment to the Constitution of the United States and article twenty-ninth of the amendments to the Constitution of the state of Connecticut."

General Statutes § 52-190b provides in relevant part: "Nothing in this section shall be construed to preclude any party or a judge from, at any time, requesting the Chief Court Administrator, or the Chief Court Administrator's designee, to designate such action as a complex litigation case and transfer such action to the complex litigation docket."

General Statutes § 52-225d (g) provides: "Nothing in this section shall be construed to limit the right of a claimant, defendant or defendants and insurers to settle claims as they consider appropriate and in their complete discretion at any time."

General Statutes § 52-225l (e) provides: "Nothing contained in sections 52-225g to 52-225l , inclusive, shall be construed to authorize any transfer of structured settlement payment rights in contravention of any law or to imply that any transfer under a transfer agreement entered into prior to October 1, 2003, is valid or invalid."

General Statutes § 52-292 provides in relevant part: "Nothing herein contained shall be construed as prohibiting the plaintiff in any action of tort from satisfying such judgment out of the real estate of such association."

General Statutes § 52-557q provides in relevant part: "Nothing in this section shall be construed to (1) limit or restrict in any way any legal protection a broadcaster or outdoor advertising establishment may have under any other law for broadcasting, outdoor advertising or otherwise disseminating any information, or (2) relieve a law enforcement agency from acting reasonably in providing information to the broadcaster or outdoor advertising establishment."

See, e.g., General Statutes § 52-557b (a) (qualified medical personnel who voluntarily render first aid "shall not be liable" for ordinary negligence); General Statutes § 52-557l (a) (persons who donate food and nonprofit organizations or corporations that distribute donated food "shall not be liable for civil damages or criminal penalties resulting from the nature, age, condition or packaging of the food"); General Statutes § 52-557n (b) (municipalities and their officers and agents "shall not be liable for damages to person or property resulting from [ten enumerated situations or conditions]"); General Statutes § 52-557r (b) ("[a] fire department that delivers to, or installs at, residential premises a device or batteries for such a device shall not be liable for civil damages for personal injury, wrongful death, property damage or other loss").

See, e.g., General Statutes § 52-557e ("[n]o action may be brought to recover damages against any licensed physician for any decision or action taken by him as a member of a hospital utilization review committee").

See, e.g., General Statutes § 52-557m (directors, officers, and trustees of nonprofit, tax-exempt organizations "shall be immune from civil liability for damage or injury ... resulting from any act, error or omission made in the exercise of such person's policy or decision-making responsibilities").

See, e.g., General Statutes § 52-557j ("[n]o landowner may be held liable for any injury sustained by any person operating a snowmobile, all-terrain vehicle ... motorcycle or minibike or minicycle ... upon the landowner's property"); General Statutes § 52-557o ("[n]o action for trespass shall lie against any surveyor licensed under chapter 391 ... who enters upon land other than the land being surveyed without causing any damage to such other land in order to perform a survey"); General Statutes § 52-557q ("[n]o claim for damages shall be made against a broadcaster ... or an outdoor advertising establishment ... that, pursuant to a voluntary program ... broadcasts or disseminates an emergency alert").

Of course, as in all cases involving the construction of a statute, if the legislature disagrees with our interpretation of § 52-571b (d), or otherwise believes that religious institutions should be entitled to immunity from employment discrimination actions, it is free to enact legislation conferring such immunity.

See, e.g., 36 H.R. Proc., Pt. 14, 1993 Sess., pp. 4922-23, remarks of Representative Richard D. Tulisano ("Let me make it clear. There was a case a few years back called the Smith case, which ... reduced the requirements [on] a state when it tried to limit the free exercise of religion.... All we're talking about here is that in fact when the [s]tate tries to limit activities, such as candles in a church, receiving wine at Holy Communion, wearing a yarmulke in court, in order to restrict that activity, which is otherwise religiously allowed ... there must be a compelling [s]tate reason in order to do it.").

The commission claims that we lack appellate jurisdiction to entertain the plaintiff's appeal from the trial court's judgment for the same reason that the trial court dismissed the plaintiff's appeal: the commission's order was interlocutory and not final for purposes of appeal. The commission, however, confuses the jurisdiction of the Superior Court, which, in the present case, is governed by General Statutes § 4-183, with the jurisdiction of the Appellate Court, which is governed by General Statutes § 4-184. The trial court's dismissal of the plaintiff's administrative appeal was not interlocutory, whereas the commission's ruling declining to dismiss the complaint was interlocutory. Thus, the trial court's dismissal was final and therefore appealable. See General Statutes § 4-184 ; Doe v. Dept. of Public Health , 52 Conn. App. 513, 517, 727 A.2d 260, cert. denied, 249 Conn. 908, 733 A.2d 225 (1999).