******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JAMAAL COLTHERST
## (SC 20401)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to statute (§ 54-91g), when sentencing a child whose case has been transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court and the child has been convicted of a class A or B felony pursuant to such transfer, the sentencing court is required to consider certain factors, including the defendant's age at the time of the offense and the hallmark features of adolescence.

Pursuant further to statute (§ 54-125a (f) (1)), a person convicted of a crime or crimes committed while such person was under the age of eighteen years of age and serving a sentence for that crime or crimes of more than fifty years of imprisonment shall be eligible for parole after serving thirty years.

The defendant, who had been convicted of numerous crimes, including capital felony, murder and felony murder, in connection with the shooting death of the victim, appealed to the Appellate Court, challenging the sentence imposed by the trial court following its granting of his motion to correct an illegal sentence. The defendant, who was seventeen years old at the time of the shooting and, pursuant to then applicable law, was charged and tried as an adult, originally had been sentenced to life imprisonment without the possibility of release followed by seventy-one years of imprisonment. In light of the enactment of legislation (P.A. 15-84), which, pursuant to certain of its provisions, retroactively afforded certain juvenile offenders, including the defendant, parole eligibility and rendered the defendant's capital felony conviction invalid, the defendant filed a motion to correct an illegal sentence in which he sought to have his conviction of capital felony vacated and argued that § 54-91g required the trial court, in resentencing him, to consider the relevant factors set forth therein. The trial court granted the defendant's motion and, following a hearing, dismissed the capital felony and felony murder counts, and sentenced the defendant to a total effective sentence of eighty years of imprisonment to run consecutively to a sentence of eighty-five years of imprisonment that he was serving in connection with his conviction of unrelated crimes. In resentencing the defendant, the trial court, pursuant to § 54-91g, considered youth related mitigating factors, as well as other relevant factors, and noted that the defendant would be eligible for parole. On appeal, the Appellate Court upheld the trial's court sentence, rejecting the defendant's claim that the trial court, in imposing that sentence, failed to account adequately for his youth at the time he committed the underlying crimes, as required by § 54-91g. On the granting of certification, the defendant appealed to this court, claiming that the Appellate Court incorrectly concluded that the trial court had followed the statutory requirements of § 54-91g in resentencing him. *Held*:

1. The defendant, who was serving two definite sentences of 85 and 80 years imprisonment that were to run consecutively, will be eligible for parole after serving 30 years of the 165 year aggregate term of the two definite sentences; on the basis of its interpretation of § 54-125a (f) (1) and the statute (§ 53a-38 (b) (2)) governing the calculation of the aggregate term of multiple, definite sentences that run consecutively, and in light of the legislative history underlying 54-125a (f) (1), this court concluded that, when a defendant, such as the defendant in the present case, is serving more than one definite sentence, his parole eligibility date for purposes of § 54-125a (f) (1) is calculated on the basis of the aggregate term of the definite sentences.

2. Contrary to the defendant's claim, § 54-91g did not apply to the defendant, as neither of the two conditions that would make that statute applicable to him and trigger its required sentencing considerations was met: the plain language of § 54-91g restricts its application to a child whose case has been transferred from the juvenile docket to the regular criminal

docket and who has been convicted of a class A or B felony pursuant to that transfer, and, because the defendant, who was not a child under the applicable law ((Rev. to 1999) § 46b-120 (1)) when he committed his crimes, was charged as an adult and prosecuted under the regular criminal docket, his case was not transferred from the juvenile docket to the regular criminal docket, and he was not convicted pursuant to any such transfer; moreover, consistent with this court's decision in *State* v. *Delgado* (323 Conn. 801) and the plain language of § 54-91g, that statute does not apply retroactively to defendants, like the defendant in the present case, who, although under the age of eighteen when they committed their offenses, were initially charged and tried as adults; accordingly, although the trial court incorrectly applied § 54-91g in considering adolescent related mitigating factors in resentencing the defendant, the defendant received more consideration than that to which he was statutorily entitled, resulting in a much reduced sentence with the possibility of parole after he serves thirty years, and, therefore, the Appellate Court's judgment upholding the defendant's sentence was affirmed.

Argued March 30—officially released October 13, 2021*

*Procedural History*

Substitute information charging the defendant with the crimes of capital felony, murder, felony murder, kidnapping in the first degree, conspiracy to commit kidnapping in the first degree, robbery in the first degree, robbery in the second degree, larceny in the first degree and larceny in the fourth degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Mulcahy, J.*; verdict and judgment of guilty, from which the defendant appealed to this court, which affirmed the trial court's judgment; thereafter, the court, *Dewey, J.*, granted the defendant's motion to correct an illegal sentence, dismissed the charges of capital felony and felony murder, and resentenced the defendant, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Alvord* and *Lavery, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Michael W. Brown*, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Vicki Melchiorre*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. In this certified appeal,[1] the defendant, Jamaal Coltherst, appeals from the judgment of the Appellate Court affirming the judgment of the trial court, which resentenced him for crimes he committed in 1999, when he was seventeen years old. In his original brief to this court, the defendant claimed that the Appellate Court incorrectly concluded that the trial court followed the statutory requirements of General Statutes § 54-91g in resentencing him to eighty years of incarceration.[2] He argued that the statute created a presumption against the imposition of an effective life sentence, which can be overcome only upon the court's finding that the defendant is incorrigible. Because we conclude, as we explain in this opinion, that § 54-91g does not apply to the defendant, we do not reach the issue of whether the Appellate Court correctly concluded that the trial court followed the statutory requirements of § 54-91g in resentencing the defendant to a term of eighty years of incarceration.

Following oral argument, this court ordered the parties to file supplemental briefs addressing two issues: First, "[d]oes [§] 54-91g apply in cases where, as here, the defendant was not charged as a child and transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court pursuant to [General Statutes §] 46b-127 but, rather, [was] charged as an adult under the regular criminal docket of the Superior Court?" Second, "[i]s the defendant eligible for parole when he received two distinct total effective sentences of 85 years and 80 years, respectively, to run consecutively, and, if so, when is he eligible for parole on each case?" As to the second issue, we conclude, consistent with an affidavit submitted by Richard Sparaco, the executive director of the Connecticut Board of Pardons and Paroles (board), that the defendant will be eligible for parole after serving 30 years of the 165 year aggregate term of the two distinct total effective sentences that he is currently serving. As to the first issue, we conclude that § 54-91g does not apply to the defendant. Accordingly, we affirm the judgment of the Appellate Court.

The following facts and procedural background are relevant to the resolution of this appeal. This case arose from the October 15, 1999 carjacking, kidnapping, and murder of the victim, Kyle Holden, by the defendant and Carl Johnson. See *State* v. *Coltherst*, 263 Conn. 478, 485–86, 820 A.2d 1024 (2003). On the day that the defendant was released from juvenile detention, where he had been incarcerated for violating probation after having been convicted on charges of assault in the third degree, the defendant and Johnson planned to commit a carjacking. Id., 483–84. They scouted out various locations and potential targets before settling on the victim, whose car was parked outside an exotic dance club in

East Hartford. Id., 484–85. When the victim exited the club, Johnson held a gun to his head, and Johnson and the defendant forced the victim into his car. Id., 485. Johnson then drove the car to an automated teller machine (ATM), while the defendant, who held the gun, sat with the victim in the backseat. Id. They used the victim's bank card to withdraw money from the ATM and then brought the victim to a nearby entrance ramp to Interstate 84, where Johnson shot the victim in the head, killing him almost instantly. Id., 485–86. Over the next eight days, the defendant and Johnson continued to use the victim's car and made withdrawals from his bank account using his bank card. Id., 486. Thereafter, they were arrested by the police, who had been on the lookout for the victim's car after the victim was reported missing. See id., 486–87.

Because the defendant was seventeen years old at the time he committed these crimes, he was tried as an adult under the then applicable law. See General Statutes (Rev. to 1999) § 46b-120 (1) (limiting, as general rule, for purposes of delinquency, definition of "child" to persons under sixteen years of age at time of offense). "After a jury trial, the defendant was convicted of capital felony, murder, felony murder, kidnapping in the first degree, robbery in the first degree, robbery in the second degree, larceny in the first degree, conspiracy to commit kidnapping in the first degree, and larceny in the fourth degree. The trial court merged the convictions of capital felony, murder, felony murder and kidnapping in the first degree and imposed a sentence of life imprisonment without the possibility of release on the capital felony count, twenty years imprisonment on the count of robbery in the first degree, ten years imprisonment on the count of robbery in the second degree, twenty years imprisonment on the count of larceny in the first degree, twenty years imprisonment on the count of conspiracy to commit kidnapping in the first degree, and one year imprisonment on the count of larceny in the fourth degree, all to be served consecutively to the sentence of life imprisonment, for a total effective sentence of life imprisonment without the possibility of release followed by seventy-one years [of] imprisonment." *State* v. *Coltherst*, supra, 263 Conn. 487–88.

Subsequent to the defendant's original sentencing, significant changes in juvenile sentencing law prompted the resentencing proceedings that are the subject of this appeal. We recently summarized the effect of those changes: "Under the federal constitution's prohibition [against] cruel and unusual punishments, a juvenile offender cannot serve a sentence of imprisonment for life, or its functional equivalent, without the possibility of parole, unless his age and the hallmarks of adolescence have been considered as mitigating factors. *Miller* v. *Alabama*, 567 U.S. 460, 476–77, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *Casiano* v. *Commissioner of*

*Correction*, 317 Conn. 52, 60–61, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*, 577 U.S. 1202, 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016); *State* v. *Riley*, 315 Conn. 637, 641, 110 A.3d 1205 (2015), cert. denied, 577 U.S. 1202, 136 S. Ct. 1361, 194 L. Ed. 2d 376 (2016)." *State* v. *Williams-Bey*, 333 Conn. 468, 470, 215 A.3d 711 (2019). The United States Supreme Court has held that *Miller* applies retroactively to cases on collateral review. *Montgomery* v. *Louisiana*, 577 U.S. 190, 206, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). The court clarified, however, that "[g]iving *Miller* retroactive effect . . . does not require [s]tates to relitigate sentences, let alone convictions, in every case [in which] a juvenile offender received mandatory life without parole. A [s]tate may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Id., 212.

To comply with the decision of the United States Supreme Court in *Miller*, as well as this court's decisions in *Riley* and *Casiano*, the legislature enacted No. 15-84 of the 2015 Public Acts (P.A. 15-84). Section 1 of P.A. 15-84, codified at General Statutes § 54-125a (f) (1), ensures parole eligibility for all persons convicted of crimes committed when they were under eighteen years of age who received a sentence of ten years or more.[3] Section 2 of P.A. 15-84, codified at § 54-91g, requires a sentencing court to consider, inter alia, the "the hallmark features of adolescence" and the differences between the brain development of a child and an adult when sentencing a child who has been convicted of a class A or B felony following transfer of the child's case from the docket for juvenile matters to the regular criminal docket of the Superior Court.

The defendant became eligible for resentencing pursuant to § 6 of P.A. 15-84, which repealed General Statutes § 53a-46a, the capital felony provision, pursuant to which the defendant had been sentenced. The substitute provision, codified at General Statutes (Supp. 2016) § 53a-46a, made persons who committed a capital felony when they were under eighteen years of age ineligible for the death penalty.[4] The passage of P.A. 15-84, therefore, rendered the defendant's capital felony conviction invalid.[5] Relying on that change in the law, the defendant filed a motion to correct an illegal sentence. He sought to have his conviction of capital felony vacated and argued that, upon resentencing, § 54-91g (a) (1) required the trial court to consider his age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the developmental differences between child and adult brains. He also argued that § 54-91g (a) (2) required the court, if it proposed to sentence him to a lengthy sentence under which he would be likely to die while incarcerated, to consider how the factors listed in subsection (a) (1) counseled against such a sentence.

At the hearing on the defendant's motion, neither the state nor the trial court questioned the defendant's reliance on § 54-91g. In resentencing the defendant, the court considered the mitigating factors of youth but also took into account the horrific nature of the crimes, the defendant's level of involvement in them, his criminal history, his attempts to deflect blame for his crimes, and his disciplinary record in prison. The court dismissed the counts of capital felony and felony murder, and sentenced him to a total effective sentence of eighty years of imprisonment on the remaining counts.[6] The court further ordered the defendant's total effective sentence in the present case to run consecutively to the sentence of eighty-five years of imprisonment the defendant is serving for a conviction involving his shooting of another victim four days after he and Johnson killed the victim in the present case. See *State* v. *Coltherst*, 87 Conn. App. 93, 95–98, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005). The court noted that the defendant would be eligible for parole.

In his appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court improperly failed, pursuant to § 54-91g, "to account adequately for the defendant's youth at the time he committed the underlying crimes . . . ."[7] *State* v. *Coltherst*, 192 Conn. App. 738, 740, 218 A.3d 696 (2019). The Appellate Court rejected the defendant's argument that § 54-91g creates a presumption against the imposition of an effective sentence of life imprisonment—in the present case, eighty years—for defendants who were minors at the time they committed their crimes. Id., 752–53. The court grounded its decision on the plain and unambiguous language of the statute; see id., 751; which requires that the sentencing court "[c]onsider" how the scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development counsels against the imposition of a lengthy sentence under which it is likely that the child will die while incarcerated. General Statutes § 54-91g (a) (1) and (2); see also *State* v. *Riley*, 190 Conn. App. 1, 26–28, 209 A.3d 646 (rejecting, on basis of plain language of § 54-91g, defendant's argument that language and legislative history of P.A. 15-84 created "a presumption against the imposition of a life sentence on a juvenile defendant,[8] and such exceedingly rare sentences can only be imposed after a specific finding that the juvenile being sentenced is permanently incorrigible, irreparably corrupt, or irretrievably depraved" (footnote added; internal quotation marks omitted)), cert. denied, 333 Conn. 923, 217 A.3d 993 (2019).[9] This certified appeal followed.

I

We first address the question of whether and when the defendant, who has received two distinct total effective sentences of eighty-five years of imprisonment and eighty years of imprisonment, respectively, to run con-

secutively, will be eligible for parole. On the basis of the parties' submissions, we conclude that the defendant will be eligible for parole after serving thirty years of the aggregate term of the two definite sentences of imprisonment that he is currently serving.

The following additional facts are relevant to our resolution of this issue. Four days after the defendant and Johnson killed the victim in the present case, they, along with a third person, Rashad Smith, accosted Michael Clark in the parking lot of an insurance firm in Wethersfield where Clark worked. *State* v. *Coltherst*, supra, 87 Conn. App. 96. They took Clark's laptop and credit card, and were in the process of forcing him into his car when he broke free and ran, but Johnson tackled him. Id., 97. The defendant and Clark then struggled, and the defendant shot Clark in the head. Id. Grievously injured, Clark nonetheless survived the shooting. See id., 98. In connection with this incident, the defendant was convicted of numerous offenses (Wethersfield assault conviction) and received a total effective sentence of eighty-five years of imprisonment. Id., 95. In the present case, when the trial court resentenced the defendant, it ordered the total effective sentence of eighty years in the present case to run consecutively to the total effective sentence of eighty-five years that the defendant received as a result of the Wethersfield assault conviction.

Under the facts of these two cases, the defendant's parole eligibility is governed by General Statutes § 53a-38 (b) (2), read in conjunction with § 54-125a (f) (1). The question of how the defendant's parole eligibility date is calculated under those two statutes presents a question of statutory interpretation subject to plenary review. See, e.g., *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 380, 194 A.3d 759 (2018); *Barrett* v. *Montesano*, 269 Conn. 787, 792, 849 A.2d 839 (2004). In construing the relevant statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008).

We begin with the language of the statutes. Section 53a-38 (b) provides: "A definite sentence of imprisonment commences when the prisoner is received in the custody to which he was sentenced. Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, the terms merge in and are satisfied by discharge of the term which has the longest term to run; (2) if the sentences run consecutively, the terms are added to arrive at an aggregate term and are satisfied by discharge of such aggregate term."

Pursuant to § 53a-38 (b) (2), therefore, the defendant's aggregate term is 165 years and the two consecu-

tive, definite sentences are satisfied by the discharge of the 165 year aggregate term. Section 54-125a (f) (1), which is set forth in full in footnote 3 of this opinion, does not expressly provide that the aggregate term is used for purposes of calculating eligibility for parole when an incarcerated person is serving more than one definite sentence. It refers only to a "definite sentence" and provides that, if a person who falls within the ambit of the statute "is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years." General Statutes § 54-125a (f) (1) (B). The plain language of §§ 53a-38 (b) (2) and 54-125a (f) (1), accordingly, does not resolve whether the parole eligibility date of a prisoner serving more than one definite sentence should be calculated on the basis of the aggregate term or each definite sentence.

Interpreting §§ 53a-38 (b) (2) and 54-125a (f) (1) to require that parole eligibility be calculated on the basis of the defendant's definite sentences rather than the aggregate term, however, would be contrary to the legislative intent underlying § 54-125a (f) (1). As we have explained in this opinion, the legislative intent behind the parole eligibility guarantee in § 54-125a (f) (1) is to comply with the constitutional standards enunciated in the decisions of the United States Supreme Court in *Miller* and *Montgomery*, as well as in this court's decisions in *Riley* and *Casiano*. See *Miller* v. *Alabama*, supra, 567 U.S. 479 (holding that "the [e]ighth [a]mendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"); see also *Montgomery* v. *Louisiana*, supra, 577 U.S. 212 (holding that "[a] [s]tate may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them"); *Casiano* v. *Commissioner of Correction*, supra, 317 Conn. 54, 69 (holding that *Miller* announced watershed rule of criminal procedure, applicable retroactively); *State* v. *Riley*, supra, 315 Conn. 659–61 (applying *Miller* to state's sentencing scheme and holding that defendant's 100 year sentence violated *Miller* because sentencing court did not consider mitigating factors of youth in sentencing defendant, who was under eighteen years of age at time of offense, to functional equivalent of life).

Treating each definite sentence separately for purposes of parole eligibility would yield the result that the defendant's only opportunity for parole would be 30 years after he began serving the 80 year sentence in the present case, 115 years after he began serving the sentence for the Wethersfield assault conviction. He would die long before becoming eligible for parole, rendering the intended remedy of parole eligibility meaningless—his sentence would effectively be one without the opportunity for parole. That interpretation would flout every recent juvenile sentencing decision of both this court and the United States Supreme Court

and, therefore, would also be inconsistent with the intent of the legislature in § 54-125a (f) (1). Accordingly, consistent with the legislative intent underlying § 54-125a (f) (1), we conclude that, when a defendant is serving more than one definite sentence, his parole eligibility date for purposes of § 54-125a (f) (1) is calculated on the basis of the aggregate term of the definite sentences.

Our conclusion is consistent with the board's interpretation of and current practice in applying §§ 53a-38 (b) (2) and 54-125a (f) (1). In an affidavit procured by the state in response to the second issue in this court's order for supplemental briefing regarding the defendant's parole eligibility, Sparaco, the executive director of the board, stated that, in circumstances such as those in the defendant's case, pursuant to §§ 53a-38 (b) (2) and 54-125a (f) (1), the board uses the aggregate term to calculate a parole eligibility date. Accordingly, Sparaco stated that, because the defendant's 165 year aggregate sentence is more than 50 years, he will be eligible for parole after serving 30 years. On the basis of our interpretation of §§ 53a-38 (b) (2) and 54-125a (f) (1), we agree with Sparaco's conclusion that the defendant will be eligible for parole after serving 30 years of the 165 year aggregate term of the two definite sentences.

II

We next address the question of whether § 54-91g applies to the defendant. The defendant, whose case was not transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court but, rather, was charged under the then applicable law as an adult under the regular criminal docket; see General Statutes (Rev. to 1999) § 46b-120; claims that the provisions of § 54-91g nonetheless apply to him. We conclude that the plain language of the statute, which restricts its application to children whose cases are transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court, makes clear that the statute does not apply to the defendant.

The applicability of § 54-91g to the defendant presents a question of statutory interpretation, subject to plenary review. See *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 232, 244 A.3d 908 (2020). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual

evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 694, 189 A.3d 79 (2018).

We begin with the language of the statute. Section 54-91g (a) provides: "If the case of a child, as defined in section 46b-120, is transferred to the regular criminal docket of the Superior Court pursuant to section 46b-127 and the child is convicted of a class A or B felony pursuant to such transfer, at the time of sentencing, the court shall: (1) Consider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development; and (2) Consider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence."

Subsection (a) of § 54-91g sets forth two conditions that trigger the required sentencing considerations in subdivisions (1) and (2) of that subsection. First, the case of a child, as defined in General Statutes § 46b-120, must be transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court pursuant to § 46b-127. Second, the child must be convicted of a class A or B felony pursuant to the transfer. Under the facts of the present case, neither of these two conditions has been met. Because the defendant was over the age of sixteen at the time that he committed his crimes, he was not a "child" under the then applicable law. See General Statutes (Rev. to 1999) § 46b-120 (1).

In 1999, when the defendant committed his crimes, General Statutes (Rev. to 1999) § 46b-120 (1) defined a delinquent "child"[10] as "any person (A) under sixteen years of age . . . ."[11] The defendant, who was seventeen at the time he committed the crimes, was treated as an adult criminal. Accordingly, the defendant's case was never initiated as a juvenile matter in the docket of the Superior Court for juvenile matters. Instead, the defendant was charged as an adult, and the state's case against him was filed in the regular criminal docket. See General Statutes (Rev. to 1999) § 46b-127 (a). Of course, because the defendant's case was not transferred from the docket for juvenile matters to the regular criminal docket, the defendant was not convicted pursuant to any such transfer. See General Statutes § 54-91g (a). Thus, neither of the two conditions that would make § 54-91g (a) applicable was met.

This court's previous interpretation of § 54-91g confirms that the legislature did not intend the statute to

apply retroactively to defendants who, although under the age of eighteen when they committed their offenses, were initially charged and tried as adults. Specifically, in *State* v. *Delgado*, 323 Conn. 801, 151 A.3d 345 (2016), although the defendant did not expressly claim that § 54-91g applied to him retroactively, we considered and rejected that interpretation of the statute as part of our analysis of his claim that he was entitled to be resentenced. See id., 814. We explained: "There are ten sections in P.A. 15-84, four of which specify that they are '[e]ffective October 1, 2015, and applicable to any person convicted prior to, on or after said date.' . . . P.A. 15-84, §§ 6 through 9. In contrast, P.A. 15-84, § 2, provides [that] it is '[e]ffective October 1, 2015,' indicating that the legislature did not intend for this section to apply retroactively. Moreover, there is nothing in the text of . . . § 54-91g or the legislative history of P.A. 15-84 to suggest that the legislature intended that all [persons] convicted of a class A or B felony [committed when they were under the age of eighteen] who were sentenced without consideration of the age related mitigating factors identified in *Miller* would be resentenced. In sum, even if the defendant had alleged that his sentence was imposed in an illegal manner because the trial court failed to adhere to the requirements of [§ 54-91g], he would not be able to demonstrate that that [statute] applies to him." *State* v. *Delgado*, supra, 814. We added: "Although the text of [§ 54-91g] seems clear insofar as the retroactivity issue is concerned, to the extent that there is any ambiguity in the applicable statutory language, the pertinent legislative history clarifies that the legislature did not intend for this [statute] to apply retroactively. The limited discussion on this topic occurred before the Judiciary Committee. Attorney Robert Farr, a member of the working group of the Connecticut Sentencing Commission, which helped craft the proposed legislative language, discussed how the legislation would affect previously sentenced individuals. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 2015 Sess., pp. 949, 955–56. He first mentioned this court's decision in *Riley*, in which the defendant in that case had been sentenced to 100 years in prison and then resentenced, and noted that, under the proposed legislation, 'instead of having to worry about resentencing what would have happened is in 30 years, 21 years from now there will be a parole hearing and then that parole hearing would decide whether [the defendant in *Riley*] was going to be—get another parole hearing . . . . So it gave some resolution to this which was consistent we believe with the federal—with the [United States] Supreme Court cases.' Id., p. 956, remarks of Attorney Farr." *State* v. *Delgado*, supra, 814 n.9.[12]

Relying on both the statutory language and its legislative history, we concluded in *Delgado* that, even if the defendant in that case had claimed that the trial court

had failed to adhere to the requirements of § 54-91g, his claim would fail because the statute's provisions did not apply to him. Id., 814. Our conclusion in *Delgado* that § 54-91g does not apply retroactively is consistent with the plain language of the statute, which, as we have explained, limits its application, effective October 1, 2015, to children convicted of a class A or B felony following transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court, and supports our conclusion that § 54-91g does not apply to the defendant.[13] Accordingly, because the trial court incorrectly applied § 54-91g in considering adolescent mitigating factors in resentencing the defendant, he received more consideration than was required, resulting in a much reduced sentence with the possibility of parole after he serves thirty years. The state recognizes that the defendant received more consideration than that to which he was statutorily entitled but does not request that the defendant's case be remanded for resentencing and requests that this court affirm the Appellate Court's judgment.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* October 13, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] This court granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court had followed the statutory requirements under General Statutes § 54-91g in resentencing the defendant to eighty years of incarceration?" *State* v. *Coltherst*, 333 Conn. 946, 219 A.3d 377 (2019).

[2] General Statutes § 54-91g provides in relevant part: "(a) If the case of a child, as defined in section 46b-120, is transferred to the regular criminal docket of the Superior Court pursuant to section 46b-127 and the child is convicted of a class A or B felony pursuant to such transfer, at the time of sentencing, the court shall:

"(1) Consider, in addition to any other information relevant to sentencing, the defendant's age at the time of the offense, the hallmark features of adolescence, and any scientific and psychological evidence showing the differences between a child's brain development and an adult's brain development; and

"(2) Consider, if the court proposes to sentence the child to a lengthy sentence under which it is likely that the child will die while incarcerated, how the scientific and psychological evidence described in subdivision (1) of this subsection counsels against such a sentence.

* * *

"(c) Whenever a child is sentenced pursuant to subsection (a) of this section, the court shall indicate the maximum period of incarceration that may apply to the child and whether the child may be eligible to apply for release on parole pursuant to subdivision (1) of subsection (f) of section 54-125a. . . ."

[3] General Statutes § 54-125a (f) (1) provides: "Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections

(a) to (e), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions."

[4] This court has since held that, regardless of a defendant's age at the time of the commission of a crime, the death penalty violates article first, §§ 8 and 9, of the Connecticut constitution. See *State* v. *Santiago*, 318 Conn. 1, 119, 122 A.3d 1 (2015).

[5] Because the passage of § 6 of P.A. 15-84 rendered § 53a-46a, the provision under which the defendant had been sentenced, invalid, this case is distinguishable from *State* v. *McCleese*, 333 Conn. 378, 215 A.3d 1154 (2019), and *State* v. *Delgado*, 323 Conn. 801, 151 A.3d 345 (2016). In each of those cases, this court concluded that the trial court lacked subject matter jurisdiction over the defendant's motion to correct an illegal sentence. See *State* v. *McCleese*, supra, 387; *State* v. *Delgado*, supra, 813. In those cases, the sole defect relied on by the defendants in seeking resentencing was the failure of the trial court, in the original sentencing, to consider the mitigating factors of youth in sentencing each of them to a sentence without eligibility for parole. See *State* v. *McCleese*, supra, 385; *State* v. *Delgado*, supra, 803–804. Because the passage of §1 of P.A. 15-84, codified at § 54-125a, made those defendants eligible for parole, we explained, their sentences were no longer invalid. See *State* v. *McCleese*, supra, 387; *State* v. *Delgado*, supra, 812.

By contrast, in the present case, although the defendant is now eligible for parole, it is indisputable that his capitol felony conviction and sentence were rendered invalid by the passage of § 6 of P.A. 15-84. Thus, not only did the trial court retain jurisdiction to modify his sentence, but, because the sentence had been rendered invalid, the court was required to resentence him. See Practice Book § 43-22 ("[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner").

[6] The court sentenced the defendant as follows: on count two, for murder in violation of General Statutes §§ 53a-8 and 53a-54a (a), forty years; on count four, for kidnapping in the first degree in violation of General Statutes §§ 53a-8 and 53a-92 (a) (2) (B), twenty years; on count five, for robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), ten years; on count six, for robbery in the second degree in violation of General Statutes (Rev. to 1999) § 53a-135 (a) (1), five years; on count seven, for larceny in the first degree in violation of General Statutes (Rev. to 1999) §§ 53a-8 and 53a-122 (a) (3), ten years; on count eight, for conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 and 53a-92 (a) (2) (B), ten years; and, on count nine, for larceny in the fourth degree in violation of General Statutes (Rev. to 1999) § 53a-125 (a), one year. Counts two, four, five, and eight run consecutively. Counts six, seven, and nine run concurrently to counts two, four, five, and eight.

[7] The defendant also claimed that the trial court improperly allowed him to provide additional remarks to the court at the time of resentencing, in violation of his rights to counsel, due process, and allocution. *State* v. *Coltherst*, 192 Conn. App. 738, 740–41, 218 A.3d 696 (2019). The Appellate Court's rejection of that claim is not before us in this appeal.

[8] Although the defendant in the present case often refers to himself as a "juvenile" because he was a minor when he committed the crimes, we emphasize that, in 1999, the law did not afford him juvenile status for purposes of delinquency proceedings. Seventeen year olds were not afforded juvenile status until 2012. See generally Public Acts, Spec. Sess., June, 2007, No. 07-4, §§ 73 through 78; Public Acts, Spec. Sess., September, 2009, No. 09-7, §§ 69 through 89.

[9] The United States Supreme Court recently held that *Miller* does not require a sentencing court, prior to imposing a discretionary sentence of life imprisonment without the possibility of parole on defendants convicted of a homicide committed when they were under the age of eighteen, to make a separate factual finding of permanent incorrigibility. See *Jones* v. *Mississippi*, U.S. , 141 S. Ct. 1307, 1318–19, 209 L. Ed. 2d 390 (2021).

[10] By contrast, under the current statute, a delinquent "child" includes "any person . . . who is . . . under eighteen years of age and has not been legally emancipated . . . ." General Statutes § 46b-120 (1) (A) (i) (I).

[11] General Statutes (Rev. to 1999) § 46b-120 (1) (B) provides that the term "child" applies to a person over sixteen years of age only if that person, "prior to attaining sixteen years of age, has violated any federal or state law or municipal or local ordinance, other than an ordinance regulating behavior of a child in a family with service needs, and, subsequent to attaining sixteen years of age, violates any order of the Superior Court or any condition

of probation ordered by the Superior Court with respect to such delinquency proceeding . . . ." A child under sixteen years old charged as a delinquent in 1999 and made subject to a court order in that delinquency proceeding by the Superior Court for juvenile matters could, at any time after he turned sixteen or older, be subject to a juvenile prosecution for violating the court's order.

[12] Neither of the parties addressed in their supplemental briefs the import of our conclusion in *Delgado* that § 54-91g does not apply retroactively. We observe, however, that, in light of that conclusion, even if the defendant had been transferred from the docket for juvenile matters to the regular criminal docket of the Superior Court pursuant to § 46b-127, § 54-91g would not apply to him.

[13] We disagree with the defendant's conclusory statement in his supplemental brief that this construction renders § 54-91g unconstitutional because it violates his right to equal protection. Even if we agreed with the defendant's statement that he is similarly situated to a child sentenced after October 1, 2015, who is convicted of a class A or B felony following transfer to the regular criminal docket—which we do not—the differing treatment survives rational basis review. That is, the legislature rationally could provide one remedy for persons in the defendant's class and a different remedy to persons who meet the conditions under which the provisions of § 54-91g apply. This is the sole constitutional argument that the defendant raises in this appeal.